JOHN C. POTTER, Jr., et als., Appellants, v. A. J. L. STEVENS, Garnishee of JOHN McDOWELL, Respondent.

*Attachment— Garnishment—Fraudulent Conveyances.*—A party summoned as a garnishee, upon an allegation that he had executed his promissory notes to the defendant in the attachment suit, and that he had combined with said defendant in an attempt to defraud his creditors, cannot protect himself by showing that he had subsequently paid said notes to an assignee who was also a participant in the fraudulent acts of the defendant in the attachment. (See *ante* Potter v. Stevens, 229, and Potter v. McDowell, 31 Mo. 62.) To protect himself, the garnishee should have filed his bill requiring the holder of the notes and the plaintiff to interplead.

*Appeal from St Louis Circuit Court.*

On the 7th of April, 1858, plaintiffs instituted a suit by attachment against John McDowell, in which the said Stevens was summoned as garnishee on the 10th day of April, 1858. In his answer, filed October 11, 1858, Stevens admits that on the 31st day of March, 1858, he executed five prom-

issory notes, each for $5,000, payable to the order of said McDowell one, two, three, four and five years after date, and two notes of same date, each for $4,450, one payable two years and the other three years after date; that all of these notes were delivered to John McDowell at the time they were executed, and he has not seen them since. On the 26th day of September, 1864, Stevens filed his amended answer, alleging that he had been enjoined, and believes that before he was garnished said John McDowell had assigned two notes of $4,450 each to George McDowell, and that said garnishee duly paid said notes at maturity, as he was bound to do. The other notes prior to their maturity, he is informed, were assigned to various parties named in said answer. In the answer it is further alleged that the fee simple title to this property, for which the $5,000 notes were given, was never conveyed to said Stevens, and that there is no valid or valuable consideration for the said five notes.

Plaintiffs filed their denial of the answer of said Stevens.

Instructions given for defendant:

1. If the court, sitting as a jury, find that previous to the said defendant Stevens being summoned as a garnishee in this suit, the notes on which it is attempted to hold him as maker had been delivered to the said John McDowell, and by the said McDowell (before maturity and previous to said garnishment) endorsed over and delivered to George Mc-Dowell, there was at the time of said garnishment no indebtedness from Stevens to said John W. McDowell upon which he can be held liable to plaintiff in this suit.

2. The allegations of the garnishee in this case in his answer must be taken as true, unless proved to be untrue by the evidence offered by the plaintiff.

Plaintiffs' instructions refused:

1. If the jury believe from the evidence that the notes of A. J. L. Stevens which were transferred by John McDowell to George McDowell were so transferred for the purpose of

hindering or delaying the creditors of the said John, or the creditors of J. & W. McDowell & Co., they will find for the plaintiffs for the amount of said notes.

2. The fact that George McDowell became a partner in the firm of J. & W. McDowell & Co. in 1856, and that he put no money into said business, raises the presumption that J. & W. McDowell were not indebted to George McDowell at the formation of said copartnership.

3. If the firm of J. & W. McDowell & Co. and each and all the members of said firm were insolvent or unable to pay their debts on the 31st of March, 1858, neither of the parties could legally transfer to the other partner any negotiable security or notes that he might hold on that day.

4. If the jury believe from the evidence that George McDowell left the employment of J. & W. McDowell at St. Louis, and went into business at Washington with said J. & W. McDowell as a partner, the legal presumption is that at said time there was no indebtedness on the part of J. & W. McDowell to George McDowell.

5. If the jury believe from the evidence that George McDowell came to St. Louis without means in the year 1847, and from the time he so came to St. Louis John McDowell or J. & W. McDowell clothed, boarded and schooled him; and that all the money or means of support which he had came either from John McDowell or J. & W. McDowell until the year 1856, when he went into the firm of J. & W. McDowell & Co.; and that the said George McDowell never made any demand on either said John or the said J. & W. McDowell for services during that period; and that there was no contract to pay said George otherwise than as above stated,—this is evidence tending to prove that neither John nor J. & W. McDowell were indebted to said George when he became a member of the said firm in 1856.

6. If the jury believe from the evidence that J. & W. McDowell & Co. were insolvent when John transferred the notes in controversy to George McDowell, or that the mem-

bers of said firm were insolvent, then the said John had no right to transfer said notes to George McDowell.

7. If John McDowell was unable to pay his debts, or the debts of J. & W. McDowell & Co., when he transferred the notes to George, and such transfer was not made in good faith for the purpose of paying a legal and subsisting debt to George, said transfer was void as to creditors.

8. If the jury believe from the evidence that neither the firm of J. & W. McDowell & Co., or either the members of said firm were or was solvent or able to pay their debts on the 31st day of March, 1858, then neither of said parties could make a transfer of any note to the other parties the necessary effect of which would be to hinder or delay his creditors.

9. Unless the jury believe from the evidence that John McDowell was indebted to George to the amount of the notes transferred to him at the time of said transfer, and that such transfer was made in good faith for the purpose of paying a legal existing debt to said George, and not for the purpose or with the intention of hindering or delaying the creditors of said J. & W. McDowell & Co. or of the said John McDowell, they will find for the plaintiffs.

Judgment was entered for the garnishee, and the plaintiffs appealed.

FAGG, Judge, delivered the opinion of the court.

The facts in this case bear a very intimate relation to those in the case of Potter v. Stevens, decided at the present term. Stevens was summoned as a garnishee in the attachment suit of Potter et al. v. McDowell, instituted on the 7th day of April, 1858. In his answer to the interrogatories propounded to him, and which were the usual ones in such cases, he denied any indebtedness to the defendant McDowell, as well as the possession of any property or effects belonging to him. It is to be noted that there were two answers filed by Ste-

vens, one in October, 1858, and an amended answer in September, 1864.

In the first, after stating that he had executed and delivered to John McDowell seven negotiable promissory notes on the 31st day of March, 1858, two for the sum of $4,450 each, due and payable two and three years after date respectively; and, describing the other five notes, he says, "since which time he has not seen them, or any one of them; and the said Stevens says that he does not know whether the said notes, or any one of them, were, at the time he was garnished as aforesaid, or since said time, in the possession or under the control of the said John McDowell." The garnishment was served April 10, 1858.

In the second amended answer, after reciting the execution and delivery of the same notes to John McDowell, he says that he was informed, and believed, and so averred the fact to be, "that the said John McDowell, prior to the time he was garnished as aforesaid, assigned by endorsement and delivered the said two notes (the first two mentioned) to George McDowell for value received, and that the garnishee duly paid said notes at maturity as he was bound to do," &c.

There was a denial of the answer, and at the trial upon the issues thus presented there was a verdict and judgment for the defendant. This judgment is sought to be reversed by an appeal to this court.

It should be stated in the outset, that whilst the truth of the answer as to all of the notes mentioned had been put in issue by the reply of the plaintiffs, yet they only claimed at the trial to charge Stevens upon the two notes alleged to have been transferred by assignment to George McDowell. These two notes constituted no part of the consideration for the deed to the real estate known as the St. Ange property in the city of St. Louis. This property was the subject of litigation between John C. Potter and this defendant, heretofore referred to. These notes, amounting together to the sum of $9,000, were alleged to be the consideration for other

real estate, as well as a large number of slaves, conveyed by
John McDowell to Stevens at the same date. It should be
borne in mind that the two McDowells were brothers-in-law
to Stevens; that they were, and had been for many years, on
terms of close intimacy with him, and that John McDowell,
after conveying at different periods of time all of his real
estate and his slaves absolutely, and his household and kitch-
en furniture in trust, to Stevens, did, in the fall of 1858,
remove with his whole family to the house of Stevens, and
continued to reside with him until the fall of 1864 without
paying any board or rent. George McDowell, according to
his own testimony and that of the defendant Stevens also,
who testified in the attachment suit against John McDowell,
was a single man. He came to St. Louis when a boy, had
no property and never accumulated any; his expenses for
tuition, clothing and board were borne exclusively by his
brother from 1847 to 1856. At this time he became a part-
ner in the store of his brothers John and William McDowell
in the city of St. Louis, but was only such to the extent of
a certain share of the profits. The evidence shows that all
of these conveyances to Stevens were voluntary, and evi-
dently made to prevent his creditors from proceeding against
his property for the purpose of collecting their demands.
To begin with the testimony showing the embarrassed condi-
tion of the firm of J. & W. McDowell & Co. in 1857 and com-
ing down to 31st March, 1858, and the several conveyances
of his property to his brother-in-law Stevens, there is noth-
ing to relieve John McDowell from the charge of a contin-
ued design to make a fraudulent conveyance of his property
and to place it beyond the reach of his creditors. The bare
recital of these transactions would seem to be almost suffi-
cient to stamp them with fraud, and to show a guilty knowl-
edge and participation with John both on the part of Stevens
and his brother George. As to John McDowell, it shows a
purpose to sell his entire property upon a credit extending
from one to five years, taking notes for the same, and with

deeds of trust to secure their payment, and then transferring the same to other parties. The idea of there being any sufficient consideration for the assignment of notes amounting to $9,000 to his brother George, a partner in the firm and liable for its debts to the extent of any means in his possession, as a compensation to him for former services, is simply absurd and not to be entertained for a moment. The position of George McDowell gave him an opportunity of knowing the condition of his brother's affairs, and these conveyances and transfers of all his property and effects were sufficient to affect him with notice of the designs of John, overwhelmed as he was at the time with debts and embarrassments.

The defendant Stevens assumes in his answer to settle the question of his liability to pay these notes after the service of the garnishment upon him. A prudent man under such circumstances, instead of deciding which of the parties claiming the benefit of these notes were really entitled to it, would have asked the protection of the law. Having elected to pay them to George McDowell, he has placed it beyond the power of the court to protect him.

The facts in this case are so numerous, and covering such a variety of transactions, as to make it impracticable to comment upon them fully and for the purpose of showing the conclusions to which they lead. Taken altogether, they disclose on the part of all these men a deliberate purpose to aid and assist in carrying out a fraudulent design, which seems to be apparent and incapable of concealment throughout. That this defendant, who, according to his own statement, was not worth more than the total amount of the notes which he executed to John McDowell, should, without any special inducement moving him thereto, encumber himself with debts in the purchase of this property, is exceedingly improbable, to say the least of it. That he, a farmer, living in St. Louis county, should suddenly, and without assigning any special reason therefor, conceive the idea of buying

out a store in the town of Forsyth, in Taney county—an inaccessible and remote point from his residence—and entrust-his brother-in-law George McDowell with ten or twelve thousand dollars, to be invested in the mercantile business, only increases the difficulty of accounting for his conduct. The whole story, however, is placed entirely beyond credit by the manner in which he claims to have paid the amount of these notes. George says that in the summer of 1861, and whilst he was carrying on the business at Forsyth, some Federal soldiers, then in that part of the State, marched to the town ; fighting commenced at or near the place ; he ran off for fear of getting hurt and abandoned the store—all of the goods, excepting a small quantity of iron, being carried off by the soldiers or destroyed. After remaining in the State of Arkansas for about two years he returned to Missouri, when he and Stevens both concluded that he was responsible for the loss of the goods, amounting to just about the sum of the two notes, and they were delivered up in satisfaction of his liability.

This case was tried by the court sitting as a jury. It would only be necessary to notice the declarations of law, given or refused, for the purpose of ascertaining the theory upon which the finding was made. We conclude from an examination of the whole case that it was not supported by the evidence. Stevens cannot escape his liability upon the ground that he has paid these notes in full to George McDowell even if such a statement could be for a moment believed. He cannot be permitted to set up the fraud to protect him, and his liability to the plaintiffs in this proceeding is but the legitimate result of his own wrong doing.

The other judges concurring, the judgment will be reversed and the cause remanded.