SAMUEL SIMMONS, Respondent, *v.* MARCELLA MACADARAS ET AL., Appellants.

### December 10, 1878.

1. Where A. becomes owner of one-half of the reversion and one-third of the leasehold, the remainder of the reversion being owned by another, who also owns one-sixth of the leasehold, the remainder of the leasehold being owned by third parties, there can be no partition at the suit of A.
2. The acquisition by A. of the reversion while he owned one-third of the leasehold, did not create a merger of the entire leasehold estate in the fee, there being an intervening estate in the other lessees.

APPEAL from St. Louis Circuit Court.
*Reversed and remanded.*

JOHN N. STRAAT, for appellants: Merger. — *Shehan* v. *Hampton*, 2 Keyes, 304; *Daugherty* v. *Jack*, 5 Watts, 456; *Cook* v. *Brightly*, 46 Pa. St. 439; *Phillips* v. *Clarkson*, 2 Binn. 138; *Pennington* v. *Coats*, 6 Wheat. 277; *Chamley* v. *Hausberry*, 13 Pa. St. 16; *Holtz's Appeal*, 40 Pa. St. 200; *Duncan* v. *Drury*, 9 Barr, 332.

JAMES TAUSSIG, for appellant Green: When the owner of a fee-simple estate grants a lease of the premises of which he has the fee, he, as reversioner, is not entitled to involuntary partition against his lessees. He is not in possession; his lessees are; they hold adversely to the reversioner; there is neither the unity of interest nor the unity of possession which the law requires. — *Alexander* v. *Warrance*, 17 Mo. 228; *Lambert* v. *Blumenthal*, 26 Mo. 471; *Forder* v. *Davis*, 38 Mo. 107; *Shaw* v. *Gregoire*, 41 Mo. 407; *Gott* v. *Powell*, 41 Mo. 449; *Wommack* v. *Witmore*, 58 Mo. 448; *Brown* v. *Brown*, 8 N. H. 93; *Phelan* v. *Keelley*, 25 Wend. 389; *Miller* v. *Miller*, 9 Abb. Pr. (N. S.) 444. Merger. — *Johnson* v. *Johnson*, 7 Allen, 196; *Boston* v. *Condit*, 19 N. J. Eq. 394; *Blodgett* v. *Hildreth*, 8 Allen, 186; *McConnell* v. *Kibbe*, 43 Ill. 12; *Cook* v. *Webb*, 19 Minn. 167; *Clark* v. *Clark*, 56 N. H. 105; *Buffon* v. *Dean*, 4 Gray, 385; *Pratt* v. *Bank of Bennington*, 10 Vt. 293; *Sherman* v. *Abbott*, 14 Pick. 448.

SAMUEL REBER, for respondent: Merger. — 4 Kent's Comm. 99, 100; 3 Prest. on Conv. 24, 89, 90, 320, 321; 5 Williams, 382, top pp. 370, 373; *Badely* v. *Vigurs*, 26 Eng. Law & Eq. 144; 3 Johns. Ch. 53; *Atkinson* v. *Angert*, 46 Mo. 516; *Miller* v. *Talley*, 48 Mo. 503. Partition. — *Reinhardt* v. *Wendeck*, 40 Mo. 577.

HAYDEN, J., delivered the opinion of the court.

This is a suit for partition of a lot and a building thereon. Shepard, being the owner in fee of a vacant lot on Fourth Street, in St. Louis, on February 15, 1864, leased it to the respondent, Simmons, for the term of fifty years, at a rent

which varied during the first years, but was $3,000 after the expiration of ten years from the beginning of the term, the first day of April, 1864.   By the lease it was provided that at the expiration of the first fifty years and every fifty years thereafter the lease should be renewed from time to time forever, upon the same terms ; that the lessee should erect upon the lot a building four stories in height, worth at least $25,000.   There were various transfers, and finally the respondent held one-third, Bernard Crickard one-sixth, John Doyle one-sixth, and Barclay, trustee for Mrs. Barrett, one-third of the leasehold estate.   In the year 1865, Shepard conveyed his reversionary interest in the real estate, and it appeared that in 1870 the respondent held one-third of the leasehold estate and one-half of the reversion, Crickard one-sixth of the leasehold and one-half of the reversion, Barclay, as trustee for Mrs. Barrett, one-third of the leasehold estate, and the estate of John Doyle one-sixth of the leasehold estate.   Doyle died in 1867, and Green, his administrator, is one of the appellants.   Crickard died in 1872, and devised all his estate to the appellant MacAdaras. Other parties were also made defendants, but it is not necessary to describe them or their interests.   The present suit was brought in December, 1876, and by it the respondent seeks partition as against appellants representing the interests which have been described.

It appeared that the respondent erected a building upon the land according to the terms of the lease, and that, to enable him to do so, he obtained in 1864 a loan of $37,000 from Crickard and Doyle, which was secured by deed of trust on the leasehold property ; that by agreement, the net rents of the building were used to pay off this encumbrance ; and that the respondent managed the property, paid off this debt, and afterwards continued to collect the rents and distribute the money among the lessees according to their interests, rendering annual accounts to his co-lessees, and crediting himself with his share of the rents according to

his interest in the leasehold estate. The instructions of the appellants were refused, and a decree entered ordering partition of the property as prayed in the petition, and sale of the property, including leasehold and reversion, as a whole.

It is contended by the respondent that there was here a merger *pro tanto* of the leasehold estate in the fee when the reversion was conveyed to the respondent, and also when the respondent conveyed one-half of the reversion to Crick- ard, who then held one-third of the leasehold for the joint benefit of himself and Doyle. But if this is allowed, for the sake of argument, it is not easy to see how it advances the respondent's position or entitles him to the decree which he obtained. If there was such a merger, this certainly did not destroy the leasehold estate, as such. There were other lessees, and merger " *pro tanto* " could not destroy their estate. They were tenants in possession under the lease, while the respondent, on the theory supposed, is the landlord, owning an individual interest in the reversion. To make the premises fit the conclusion, it ought to be assumed that there was a merger, not *pro tanto*, but a merger of the entire leasehold estate in the fee. But the two estates did not " meet, without any intervening estate, in the same per- sons," and it cannot be pretended that the leasehold estate, as such, was extinguished. There was an outstanding estate in other persons, as there was in *Johnson* v. *Johnson*, 7 Allen, 196. The respondent could not be reversioner and lessee where he alone was concerned, but there was no in- compatibility between his reversion and the tenancy of such of the appellants as had no reversionary interest. It is not every union of estates, even, that creates merger ; and it is because there would be a sacrifice of the rights of persons in property that the doctrine has no operation where there is an intervening estate. *Miller* v. *Talley*, 48 Mo. 504.

The respondent must be held to one consistent position throughout. If there was a merger, he is then to be re-

garded as reversioner, and against his tenants he cannot maintain partition. If, on the other hand, he is a lessee bringing this action against co-lessees, he is not entitled to a decree which partitions and directs the sale of, not the leasehold, but the fee. But the alternative thus presented, the respondent attempts to meet by the position that, as owner of the reversion and part of the leasehold estate, he holds in common with all the defendants, and is, under the terms of the statute, entitled to partition against them. This position ignores the difference, seemingly a very broad one, between bringing in parties under the partition act merely as parties to the suit in order that they may be before the court for the conclusion of their rights or the preservation of their interests, and uniting in one suit, in order to obtain partition against them of their respective estates, the owners of an intervening estate, as for life or years, and the owners of the reversion. Here there are defendants who are in no way interested in the reversion, and who, in respect to the reversioners, occupy the position of tenants in possession under a lease towards their landlords owning the fee; yet these are joined in the same suit with reversioners against whom partition is asked as such. Relief is sought on the basis of treating the property as an entirety, — that is, of ignoring the intervening estate, as such, however acquired or existing, — thus depriving the lessees, in case of a sale, as here, of the power to purchase the leasehold.

It is not pointed out what words of the statute justify such a proceeding. The first and third sections allow persons to be brought in who are interested in the property, and their various rights may be described; the fourth is more imperative; but these sections sanction no such proceeding as the present, which not only mingles different causes of action, but joins persons, not as parties incidentally interested, but as defendants against whom relief is principally sought, who have no interest in common, and

are not connected by unity of estate or possession.   Thus, one of these parties who resists partition is sued and treated as an owner of a reversionary interest, and upon that ground the partition is sought to be maintained as to the reversion ; but upon that ground there is nothing in common between this defendant and the defendants who are interested merely in the leasehold ; yet partition is asked alike as against both.

But if the words of the statute were ambiguous, it would not readily be conceded that a construction could be put upon them which would deprive the owners of an intervening estate of their rights.   If the well-settled principles of law were adhered to, the reversioner would bring a suit for partition of the reversion, and the owner of an interest in the leasehold for partition with his co-lessees.   In either case the partition would be of their common property, and the rights of all in that property would be carefully preserved.   But the authority must be very plainly expressed that would warrant a court, in a mere action for partition, whose basis is the division, not the extinguishment, of rights, in doing away with an intervening estate, rendering a contract like the present perpetual lease nugatory, and making impossible either the division or the purchase of the leasehold property.   No such consummation is necessary in order to enable the respondent to deal with his interests with perfect freedom.   He may obtain partition of both leasehold and reversion, and in a far more equitable way than the present, since the rights of all parties would be carefully regarded.   But the fact that the respondent has acquired a reversionary interest cannot entitle him to abridge the rights of his co-lessees ; and it cannot in reason be pretended that that is not an essential abridgment of their rights which deprives them of any chance of partition in an estate whose preservation may be of extreme importance to them, or of any opportunity of purchasing that estate.   This question involves the making of a general rule, and it is important

to consider the effect that would be produced upon the owners of small interests in property. Against this class of persons the law ought certainly not to be warped from its true bearing; and it is easy to see how the owners of such smaller interests, with little means at their command, may, if the rule contended for is adopted, be in practice deprived of the full value of their property. The objection, however, goes not merely to the practical result, but to the erroneous theory which is implied by the position. There is, under the order of the court below, no partition or corresponding division. The lessees' estate is not divided, and they, between whom and the reversioners there is only antagonism, are treated as if they were bound to the latter by community of estate and possession.

It is contended by the respondent that the case of *Reinhardt* v. *Wendeck*, 40 Mo. 597, is authority for his present position. But the court there certainly did not decide any point that concludes the present case. The court below had sustained the demurrer, and the Supreme Court reversed the decision. There was no final action, and no decision as to what action would be proper, except that the plaintiffs should have been allowed to go to trial on their petition. There is no discussion and no decision as to what would have been appropriate action in reference to the life-estate. If the decision is authority for any particular point, it is that the fact that one reversioner is in possession, enjoying a life-estate, does not prevent his co-reversioners from having partition against him as to the reversionary interest. If the decision goes to this extent, it certainly goes no further.

The judgment is reversed, and leave should be given to the respondent to amend his petition if he so elects. All the judges concur.