# THE BALTIMORE TRACTION CO. *vs.* THOMAS HELMS.

*Contributory Negligence—Walking from Behind Street Car Upon the Next Track Without Looking for Approaching Cars—Reciprocal Duties of Pedestrians and Street Railways.*

Plaintiff, a passenger on an electric street railway company, alighted from a car and, passing behind it, walked slowly upon the next track where he was struck by a car coming from the opposite direction. He knew that cars were running upon this track at short intervals, and, the view being unobstructed, if he had looked he could have seen the approaching car and he could have stopped with safety in the space between the two tracks. The car which struck the plaintiff was running at a higher rate of speed than that prescribed by municipal ordinance. *Held*, that the plaintiff was guilty of such contributory negligence as to preclude a recovery.

The degree of care which should be exercised by a person in crossing highways depends upon the circumstances of each case.

Failure to stop and look before crossing a street railway does not always constitute such contributory negligence *per se* as to prevent a recovery for an injury caused by another's negligence.

The public and street railway companies have equal rights to use the streets of a city, and the employees of the latter are bound to keep a constant lookout for persons approaching the tracks, not only at crossings but along the whole line of the railway, because pedestrians have the right to cross the street at any point.

But in the exercise of this right of crossing streets pedestrians should use their senses to ascertain whether a car is approaching. And one who deliberately walks out from behind a street car, from which he has alighted, and attempts to cross the adjoining track without using his powers of observation, and is injured by a car approaching from the opposite direction, which injury could have been avoided by the use of the most ordinary care, is not entitled to recover damages for such injury.

If a witness who can see, testifies that, although he looked, he did not see an object which, if he had really looked, he must have seen, such testimony is unworthy of consideration.

When in an action to recover damages for injuries caused by defendant's negligence, it appears from the plaintiff's own evidence that he was himself guilty of negligence directly contributing to the injury, he cannot recover.

Appeal from the Court of Common Pleas (WRIGHT, J.) The plaintiff offered the following prayers, all of which were granted :

1. If the jury find that on or about the 19th day of March, 1895, the plaintiff was injured by the car of the defendant while operated by its agents on its road, and that said injury resulted directly from the want of ordinary care and prudence of the agents of the defendant, and not from the want of ordinary care and prudence on the part of the plaintiff, directly contributing to the injury, then the plaintiff is entitled to recover.

2. If the jury find from the evidence that at the time of the accident, the car in question was being driven at a rate of speed greater than six miles per hour at the crossing of the streets, Fort avenue and Garrett avenue, if the jury find the collision occurred at said crossing, in violation of the ordinance of the Mayor and City Council of Baltimore ; and shall further find that if said car had not been running at a greater rate of speed than six miles per hour the accident could have been avoided, then there was want of ordinary care on the part of the defendant, as mentioned in the plaintiff's first prayer.

3. If the jury find from the evidence the facts testified to by the plaintiff, and that he, plaintiff, was injured as stated in plaintiff's first prayer, through the negligence of the defendants, then, in order to defeat recovery on the ground of contributory negligence on the plaintiff's part, the burden rests on the defendants to satisfy the jury : 1st. That the plaintiff was guilty of negligence. 2nd. That such negligence of the plaintiff directly contributed to the accident.

4. If the jury shall find a verdict for the plaintiff, then, in estimating the damages, they are to consider his health and condition before the injury complained, as compared with his present condition in consequence of said injury, and also the physical and mental suffering, if any, to which he was subjected by reason of said injury, and to allow him such damages as in the opinion of the jury will be fair and just compensation for the injury which he sustained.

And the defendant offered the following prayers:

1. As the uncontradicted evidence of the plaintiff in this case shows that the plaintiff left the car of the defendant, bound east on Fort avenue, and proceeded around the rear end of the car in a deliberate manner to cross the west-bound track without looking or listening for the approach of a car on the west-bound track, while he, the plaintiff, was in a space three (3) feet wide between east-bound and west-bound tracks, from which position his view was unobstructed, and was immediately struck by a car which was proceeding west, his action being the proximate cause of the accident, their verdict must be for the defendant.

2. As the uncontradicted evidence of the plaintiff shows that after alighting from a car of the defendant, bound east on Fort avenue, and while his view was obstructed by the car from which he had just alighted, he stepped upon the west-bound track, without looking or listening while in the space between the tracks (from which point his view was unobstructed), and was immediately struck by the west-bound car, his action being the proximate cause of the accident, their verdict must be for the defendant.

3. If the jury believe from the evidence that the plaintiff alighted from a car of the defendant, bound east on Fort avenue, and attempted to cross the street from behind said car, and that the motorman of the west-bound car which struck the plaintiff was unable to see the plaintiff until within a short distance of him; that the car could not be stopped before it knocked the plaintiff down, their verdict must be for the defendant, unless they further find that, by the exercise of ordinary care, the employees of the defendant might have become aware of the plaintiff's danger in time to have avoided the injury.

4. If the jury find that the employees of the defendant were negligent in running the car which struck the plaintiff at a high rate of speed while passing a car which was discharging passengers, and that the plaintiff, by the exercise of ordinary care before stepping upon the west-bound tracks,

could have avoided the injury, their verdict must be for the defendant, unless they further find that the employees of the defendant after they became aware, or, by the exercise of ordinary care, might have become aware of the plaintiff's danger, could have avoided the injury.

5. If the jury find from the evidence that the injury complained of was inflicted by the car of the defendant on Fort avenue between Garrett avenue and Andre street, the alleged violation of the city ordinance as to the speed of cars at street crossings is not to be considered.

The Court granted all the prayers of the plaintiff and rejected the first and second prayers of the defendant and granted the third, fourth and fifth prayers of the defendant. The jury returned a verdict for the plaintiff for $225. ·

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE and ROBERTS, JJ.

*Wm. Pinkney Whyte* and *Eugene H. Harris* (with whom was *Fielder C. Slingluff* on the brief), for the appellant.

It is respectfully submitted that the third prayer of the plaintiff did not put the case to the jury fairly, and that the jury should have had set forth to them the specific evidence, which the defendant claimed constituted contributory negligence, and was the proximate cause of the accident, and that the prayer was misleading. *Steever* v. *Union Railroad Co.,* 72 Md. 159; *Dunn* v. *R. R. Co.,* 98 Mo. 652. This case differs in many particulars from the cases of *The Baltimore Traction Co.* v. *Charlotte Wallace,* 77 Md. 435; *The Baltimore Traction Co.* v. *Cooke,* 80 Md. 551. Also from the *Lake Roland Elevated Railway Co.* v. *McKewen,* 80 Md. 593, which are the leading cases in Maryland. In all the above-mentioned cases there could be no doubt that there was a question to submit to the jury as to whether or not the motorman had an opportunity, after becoming aware of the plaintiff's danger or by the exercise of ordinary care, he might have become aware of the plaintiff's peril in time to have avoided the accident.

It is submitted that where a person comes from behind an obstruction, and, without stopping to look and listen, directly proceeds upon the track of a railroad company, upon which he knows that cars are running every few moments, and is struck and injured, that he must bear the consequences of his negligence; and this we find to be the law in every State and every country. *Buzby* v. *Phila. Traction Co.*, 126 Pa. St. 559; *Cain* v. *Macon, &c., Ry. Co.*, 22 S. E. Rep. 918; *Gardner* v. *Detroit, &c., R. Co.*, 97 Mich. 240; *Salter* v. *Utica R. Co.*, 75 N. Y. 279; *Houghton* v. *Chicago, &c., R. Co.*, 58 N. W. Rep. 314; *McGee* v. *Consol. St. Ry. Co.*, 60 N. W. Rep. 293; *Connolly* v. *N. Y., &c., R. Co.*, 158 Mass. 8; *Buckley* v. *Old Colony R. Co.*, 161 Mass. 26.

There is absolutely no evidence of negligence on the part of the defendant's employees, and there could be no doubt in the minds of reasonable men that the accident was caused by the failure of the plaintiff to exercise that degree of care and caution that he should have done, and that his failure to stop in the space between the east and west-bound tracks, where he had ample opportunity to have noticed the approach of the west-bound car, was the proximate cause of the accident. The defendant's first and second prayers should have been granted, and the case taken from the jury; and it is respectfully submitted that on every ground the Court below should be reversed. "He who last has an opportunity to avoid an accident is solely responsible for its consequences." *Webb's Pollock on Torts*, 579.

In this case the evidence taken as a whole can leave but one impression as to who last had the opportunity to avoid the injury. A perusal of the plaintiff's testimony, as shown by the record, will be convincing; in fact, the questions asked by the Court, with the answers thereto, show conclusively that the plaintiff crossed the tracks without looking or listening while in the space of four feet eight inches, and in which he might have stopped, and to use his own language, "in a flash he was struck." The plaintiff's contributory

negligence is clear; it was an error to submit the case to the jury. *Booth on St. Rwys.*, sec. 311–12; *Wharton on Negligence*, sec. 384.

*William Colton*, for the appellee.

The record abounds in evidence tending to prove not only such negligence as the law requires to justify the submission of the case to the jury, but gross negligence on the appellant's part, viz : Its car crossing an open street at a point shown to be a thoroughfare much frequented by citizens going to an established ferry, the direct and only means of water communication to a very populous part of a large city, at the dangerous speed of fifteen miles an hour, when the city ordinance fixes six miles an hour as the limit, and that notwithstanding the fact that at that very crossing another of the appellant's cars was in the act of discharging a passenger, who, if he wished to make the ferry connection, was bound to cross the very track on which the speeding car was running; this car, reasonably estimated to be 12 to 24 feet in length, its motorman said he could stop within one-half of its length, and yet, although he saw the appellee alight 200 feet distant from the point of collision, and go behind the car, no attempt was made to arrest the progress of his car until it was upon the appellee ; no gong was rung by such motorman, and no warning given by the conductor of the car from which appellee was in the act of alighting and had alighted ; appellee, a locomotive engineer, and cautious by habit and precept, he listened, and observing and hearing no approaching car, took the direct course to the opposite side of the street, of necessity crossing the west-bound track, at the point of intersection of two thoroughfares, to make the ferry, his place of destination ; acting then and there as a cautious and prudent man would act under like circumstances and conditions ; and was severely injured, being run down by appellant's car.

Appellee has exercised the full measure of care required of him, by the policy of the law, under the circumstances ; he had no reason to apprehend danger in crossing one public

thoroughfare at its intersection with another, because he had done all that an ordinarily careful and prudent man under like circumstances would do ; he did not see or hear, nor know of the approaching car, but its motorman saw him more than 200 feet distant, saw him alight, saw him go behind the car from which he had alighted ; that motorman should have watched for him to come from behind the car, for the only reasonable deduction and inference to be drawn from such act would be that appellee was to cross the west-bound track, for otherwise he would not go behind the car ; the motorman could stop his car, he testified, in one-half its length, 12 or 6 feet, and knowing the appellee was behind the car, it was his plain duty to stop or slow down his car, until he ascertained just where the appellee was, before he proceeded west, losing few seconds only thereby. This duty was emphasized by his instruction to slow down, and be watchful as he approached a car discharging passengers, anywhere so that none may be injured in the very manner that injury came to the appellee, but he did not slow down, not even although he was approaching a crossing ; nor did he sound his gong, the ordinary danger alarm.

Under these facts the Court left it to the jury to find, by the appellee's first prayer, whether the injury resulted "directly from the want of ordinary care and prudence of the agents of the defendant, and not from the want of ordinary care and prudence on the part of the plaintiff directly contributing to the injury." This prayer and the 2d, 3d and 4th prayers of the appellee, in reference to the question of want of care or of the existence of contributory negligence on the part of the plaintiff, and of the measure of damages, are but plain legal propositions that admit of no controversy ; they have been repeatedly approved by this Court. The 3d and 4th prayers of the defendant placed its theory and contention before the jury in the most liberal and favorable and best possible light ; its fifth prayer negatived the plaintiff's 2d prayer, if the jury found the facts therein. Of course, its 1st and 2d prayers were necessarily denied be-

cause there was clearly evidence legally sufficient to require this case to be submitted to the jury for the reasons heretofore assigned. *Phila., Wil. and Balto. R. R.* v. *Hogeland*, 60 Md. 150; *Balto. City Pass. Ry.* v. *McDonnel*, 43 Md. 534; *Cooke* v. *Balto. Trac. Co.*, 80 Md. 551; *Lake Roland Rwy.* v. *McKewen*, 80 Md. 593; *Central Rwy.* v. *Coleman*, 80 Md. 328. In *Chicago City Ry. Co.* v. *Robinson*, 127 Ill. 9, a case in which a passenger alighting from car at street crossing, passed in rear, across adjoining track, and was injured, and upon suit brought, the Court ruled that the fact " that a person passing over a sidewalk crossing in a city, steps on the track of a street railroad, whether the cars accustomed to run thereon are horse cars or grip cars, without first stopping to look and see whether a car is approaching, is not as matter of law and without regard to surrounding circumstances, negligence and want of ordinary care. The question of negligence and want of ordinary care is, in such case, a question of fact for the jury, in the light of the surrounding circumstances."

FOWLER, J., delivered the opinion of the Court.

On the 19th of March, 1895, the plaintiff boarded a car of the Baltimore Traction Company bound east on Fort avenue. On this avenue there is another track of the same company which is used for its cars going west. The track used by the cars running east is on the south side, and that used by the west-bound cars is on the north side of Fort avenue. The plaintiff alighted from an east-bound car at or near the corner of Fort avenue and Garrett street, and proceeded at once in the rear of the car he had just left, to walk north across Fort avenue. He was injured by one of the cars of the defendant company moving west. At the conclusion of the testimony of the plaintiff, the defendant asked the Court below to take the case from the jury, and its prayer to this effect having been refused, it offered testimony on its own behalf. At the conclusion of the defendant's testimony it renewed its request to have the case taken

from the jury.   But the Court again refused so to do, and
hence this appeal.   There are some other questions pre-
sented, but inasmuch as we are of opinion that the plaintiff
failed to make out a case for the jury, and is, therefore, not
entitled to recover, we will not consider them.

Assuming then, the truth of the plaintiff's testimony as
we are bound to do, this being the legal effect of the de-
fendant's first prayer, what is the testimony of the plaintiff?
When the car in which the plaintiff was riding was approach-
ing Garrett street, he notified the conductor to stop.   The
car having stopped, he left it ; and what subsequently hap-
pened was described by him in his examination in chief, his
cross-examination and in his answers to a series of ques-
tions put to him by the learned Judge below.   It seems to
us, however, that according to his own account of this un-
fortunate occurrence there is ample evidence to show that
he was injured by reason of his own carelessness and reck-
less disregard of his own safety.   In his cross-examination
he said : " As I stepped off I looked down (east) Fort avenue
to see if a car was coming in that direction, and I saw none
coming ; but unluckily for me there was one coming, to my
sorrow, and I started across the track, and I was just as
deliberate as you are now, and hearing no warning of any
approaching car I was struck ; the first thing I noticed was
when the motorman hollered " ' Look out,' and his voice
hadn't done sounding when I was hit."   " That if he had
stopped when he alighted  from the east-bound car and
waited for it to pass until his line of vision would cover the
west bound track, no accident would have happened."

The Court then asked the following questions and the
plaintiff gave the following answers : "Q.   Now, what pre-
vented you, after you passed around the car, from looking
in time ?   Answer.   Well, what I mean, your Honor, is, be-
fore I alighted from the car I looked in the direction of the
cars that came towards the west, and I didn't see any ap-
proaching car, so I was just as cool and deliberate as I
could be, thinking there was nothing, and I stepped right

on the west-bound track, and just as slow as a man could walk, and before I knew it I was struck.

Question. What I want to know is this: You passed around the rear of the car?

Answer. Yes, sir.

Question. And when you got around the rear of the car nothing obstructed your vision up in that direction?

Answer. No, sir.

Question. Then, if you could have seen the car, and must have seen it if you looked, why is it, as you say, you looked too late?

Answer. Why, because, your Honor, the car was running at such a high rate of speed it got on me before I knew it, or before I could realize it.

Question. But you would have seen it if you had looked around; it is a straight track there.

Answer. Yes, sir, it is a straight track there from the bridge and for a mile further on.

Question. In your examination in chief, you said that when you alighted from the car you stopped, looked and listened?

Answer. Yes, sir.

Question. Now, when you crossed behind the car and before you reached the west track, did you or not make an effort to look up?

Answer. I had my head turned towards the west bound track all the time; I was looking for a car to come, but saw none.

Question  *  *  *  *. What I want to get at is this: the witness said he was walking deliberately. What I want to know is, if that is the case, why, when he got around the car to where nothing obstructed his vision, he didn't stop, or what prevented him from stopping at once?" Whereupon the counsel for plaintiff informed the Court that the plaintiff " at that time was right on the three-foot space "—referring to the space between the east and west-bound tracks. In answer to further questions the plaintiff

answered that he could not possibly have stopped on the three-foot space, and that he had his foot inside the rail when the car hit him ; that he had just merely stepped over the rail, and that he heard no bell.

By the well-settled law applicable to the class of cases to which this belongs, it is not enough for the plaintiff to próve the negligence of the defendant, and the injury which followed, but he is bound also to establish by satisfactory proof, before he can recover, that he was himself free from negligence and exercised ordinary care to avoid the consequences of the defendant's negligence. The right to recover depends upon two distinct propositions of fact : First, the negligence of the defendant, and second, the exercise of due and ordinary care by the plaintiff, and if he failed to prove negligence on the part of the defendant, or if it appear from his own evidence that he was guilty of negligence directly contributing to the injury, he cannot recover. Assuming then, as we must from the plaintiff's testimony, that the defendant was guilty of negligence in running its car in violation of the city ordinance at the high rate of speed testified to, was the plaintiff guilty of such contributory negligence as will prevent a recovery ? He walked deliberately from behind a street car across a track on which he knew cars were running at intervals of a few minutes. It fully appears from his testimony that if he had looked, he could have seen the car approaching, and that no accident would have happened. If the circumstances are such that one with normal sight and hearing could see and hear then, his duty requires him to use his senses to guard against injury by the negligence of others. *Steever's case*, 72 Md. 159. And this rule applies generally to every situation in life. In *Price's case*, 29 Md. 420, ALVEY, C. J., quotes the terse and forcible remark of LORD ELLENBOROUGH : " One person being in fault will not dispense with another's using ordinary care for himself." And therefore if the plaintiff by ordinary care could have avoided the consequences of the alleged negligence of the

defendant, and there can be no doubt from his own testimony that he could have done so, and failed so to do, he would be the author of his own misfortune, and therefore no action would lie. *Price's case, supra.* Whatever may have been the *opinion* of the plaintiff as to his power to stop and look before crossing the track, the fact is that he did not take this precaution. Nor is there anything in the evidence to show that he or any man with ordinary powers could not have both stopped and looked in time to avoid injury. It does not appear, however, that he made any effort to do either, for he was in the centre of the track before he saw the car. If a witness who can see testifies that he looked and did not see an object, which if he had looked he must have seen—such testimony is unworthy of consideration. And likewise when a witness testifies, as did the plaintiff in this case, that if he had stopped in the space between the tracks he could have stood there in safety while the car passed him, it is to no purpose that, if subsequently he should be willing to stultify himself, he declares that under the circumstances it was impossible for him to stop in time to avoid the injury. Such testimony is so contradictory and inconclusive that it is unworthy of consideration, and should not therefore be allowed to go to the jury.

The public and street railway companies, as we have frequently said, have equal rights to use the streets of a city for purposes of travel, and the obligations of employees of the latter to keep a constant lookout for persons crossing or approaching the tracks must be faithfully performed not only at the crossings, but along the whole line of such railroad within the city limits, for the reason that persons have the right to cross the streets at any point along the thoroughfare. *Cook* v. *Traction Co.,* 80 Md. 551; *West. Md. R. R. Co.* v. *Kehoe,* 83 Md. 434; *Lake Rôland Co.* v. *McKewen,* 80 Md. 593. But while in the exercise of this right of crossing the public street pedestrians should use their senses to ascertain whether a car is approaching.

*Buzby* v. *Philadelphia Traction Co.*, 126 Pa. St. 559, was a case almost precisely like the one at bar. The Court say in that case, " The plaintiff, a passenger upon a cable car, got out on the north side, where he was in safety. Without waiting for the car to move or looking to the west, from which direction danger was to be apprehended, he turned sharply around the rear of the car and started to cross the street. There was room between the tracks for him to stand in safety and see the whole track. Instead of looking, he stepped upon the south track and was struck and injured by another car going east. He was properly non-suited upon the ground of contributory negligence." * * " Due and ordinary care is to be exercised in crossing public streets, as in all other transactions of life. Even upon the sidewalk, specially devoted to foot passengers, a man is bound to look where he is going, and this duty is still more imperative when he is about to cross the middle of the street, where horses, wagons and cars have equal rights with himself, and where he is bound to take notice of such other rights, and to use his own with due regard thereto." *Buzby* v. *Phila. Traction Co.*, 126 Pa. St. 559.

A similar view prevails in Missouri, Michigan, New York, New Jersey and Louisiana. *Meyer* v. *Lindell Ry. Co.*, 6 Mo. App. 301; *Kelly* v. *Hendricks*, 26 Mich. 261; *Scott* v. *Third Ave. R. R. Co.*, 59 Hun. 456; *Davenport* v. *Brooklyn City R. R. Co.*, 100 N. Y. 632; *Sheets* v. *Conolly St. Ry. Co.*, 24 Atl. Rep. 483; *Newark Pass. Ry. Co.* v. *Block*, 22 L. R. A. 374; *S. C.* 55 N. J. Law, 606; *Schulte* v. *New Orleans C. & Lake R. R. Co.*, 44 La. An. 509. It is properly said in some of the cases that the failure to stop and look before crossing a street railway will not, under all circumstances, *per se* constitute such contributory negligence as will prevent recovery. *Burbridge* v. *Kansas Cable R. R. Co.*, 36 Mo. App. 670 ; *Mc Claine* v. *Brooklyn R. R. Co.*, 116 N. Y. 465.

Nor do we by any means intend, by what we have here said, to lay down the same rule of conduct as always applicable to the crossing of tracks of steam and street railways.

The legal duties and correlative rights in the two cases are not the same, and what might be negligence in the one case, would in the other, under some circumstances, be held to be but the exercise of a legal right.   It is not necessary in this case to formulate any general rule as to the degree of care required of persons crossing highways in cities, for, as we have seen, the plaintiff failed to exercise any care whatever and seeks to avoid the legal effect of his own misconduct by relying upon the negligence of the defendant.

But even if it were desirable to attempt to lay down any general rule, it would be extremely difficult to do so. "The duty devolving upon one using a highway," say the Court in *Block's case, supra,* "for passage on foot varies with circumstances, which are infinitely various.  It may be one degree when the highway is a quiet country road, and of another degree when it is the crowded street of a great city. It may differ at different hours of the day with respect to different vehicles, and the different rates of speed at which they are moving, and by reason of different opportunities of observation.  It is impossible to classify these variant circumstances, and to lay down a precise rule as to the degree of care required in each case or class of cases."

It is enough, however, for the purposes of this case to say that one who deliberately walks out from behind a street car from which he has alighted and attempts to cross a public street without using his powers of observation and is injured by an approaching car, which injury could have been avoided by the use of the most ordinary care, will not be allowed to recover.

*Judgment reversed, without a new trial.*