STATE OF MARYLAND, FOR THE USE OF FLORENCE L. BELL ET AL., *v.* EASTERN SHORE GAS AND ELECTRIC COMPANY.

[No. 18, April Term, 1928.]

*Decided June 20th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*William L. Rawls,* with whom was *William J. Rickards, W. Brewster Deen,* and *Thomas J. Keating, Jr.,* on the brief, for the appellants.

*F. W. C. Webb* and *G. Randolph Aiken,* with whom were *Carroll E. Bounds, Austin J. Lilly,* and *Woodcock & Webb,* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

The equitable plaintiffs are the widow and children of Russell J. Bell, who was killed when an aerial wire attached to a pole which he was erecting on a lot of ground in Denton came in contact with a high tension electric wire maintained by the defendant corporation. A verdict for the defendant was directed by the trial court on the ground that the decedent was conclusively shown by the uncontradicted evidence to have contributed by his own negligence to his fatal injury. That ruling is the subject of one of the two exceptions taken at the trial, the other being concerned with the exclusion of certain testimony.

For a number of years prior to his death, which occurred on November 26th, 1925, Mr. Bell occupied as lessee a house and lot fronting on Gay Street in Denton, and he used for garden purposes an adjacent vacant lot of his lessor, extending from the street to an alley in the rear, on the other side of which was located the appellee's substation, where its electric current, transmitted from its generating plant at Laurel, Delaware, was received and reduced to a lower voltage for distribution. The current was conveyed to the substation by three high tension wires suspended on a line of poles, from one of which, standing on Gay Street opposite the end of the vacant lot cultivated by Mr. Bell, the wires passed over the lot at a height of twenty-eight feet and five inches, to a pole within the appellee's substation inclosure. An easement for the construction and maintenance of the wires over the lot was granted by its owner to the appellee in February, 1923, the line having been erected in the fall of 1922. It carried a current of 23,000 volts. The wires were not insulated, and the proof was undisputed that the high voltage

made their insulation impracticable, but the fact that they were uninsulated was readily observable from the ground, as testified by witnesses for the plaintiffs. The place where Mr. Bell dug the hole in which to plant the aerial pole was directly under the high tension wires, and about ten feet from the alley beyond and beside which the substation was located. The pole was thirty feet and four inches long, and, when it was raised to a vertical position, its top, with the attached aerial wire trailing to the ground and in contact with Mr. Bell's body, struck one of the electric wires, and his instant death resulted.

For the purposes of the trial court's action in withdrawing the case from the jury on the ground of contributory negligence, it was assumed that there may have been evidence from which primary negligence on the part of the defendant might be inferred. It is asserted and denied that such an inference can be rationally drawn from the testimony. It would be difficult upon this record to sustain the theory of primary negligence, but there is no necessity for us to make a ruling, or to discuss the grounds of the contentions, upon that subject, because the evidence conclusively proves that the unfortunate victim of the accident exposed himself by his own negligence to that catastrophe.

The testimony leaves no room for doubt as to Mr. Bell's knowledge of the presence and dangerous voltage of the electric transmission line with which his aerial pole and wire were brought in contact. The line had been constructed, and maintained for three years, during the period of his use of the lot over which it was suspended and of his occupancy of the adjacent dwelling. The high tension wires forming the transmission line, after passing over the full length of the lot, connected with transformers which stood in plain view just beyond the alley separating the lot used by Mr. Bell from the substation premises. On one of the transformers was a sign-board, about three feet in length by eighteen inches in width, on which was the warning: "Danger, 23,000 volts." The sign was about eight feet above the ground and could be seen, from the lot on the other side of the alley, over

the picket fence by which the substation area was inclosed. Prior to the erection of the line transmitting the electric current from a distant power plant, the substation building at Denton had been used for the generation of electricity. During that period Mr. Bell was employed there for several months as a fireman and engineer. At times he assisted as "a ground man" in repairing the electric lines. His duties included work about the switch-board. By experience and instruction he then acquired special knowledge as to the risk of injury from contact with uninsulated wires and appliances charged with electric current. It was testified that Mr. Bell occasionally visited the substation after the high tension line was constructed. There was testimony as to statements by him indicating his knowledge of the purpose and dangerous voltage of the wires extending to the transformers over the lot which he was cultivating. But independently of that testimony, the conclusion that he was possessed of such knowledge is unavoidable. The facts compelling that conclusion are too strong to be affected by the suggested presumption that a person will not ignore a peril of which he is aware. A known danger may be carelessly approached. The presumption of concern for personal safety must yield to proof of actual imprudence.

Negligence is a failure to exercise the degree of care which the circumstances reasonably require. 22 *R. C. L.* 9. In this case the decedent neglected precautions which were clearly necessary for his safety. If he had chosen a location for his aerial pole at a proper distance from the high tension line, or if, before raising the pole at the selected point, he had paused to consider that it was immediately under the electric wires and that they would probably be touched by the aerial wire when the pole was raised to a vertical position, the fatal accident would have been obviated. Even if the evidence permitted the inference that he may not have known the full extent of the danger of contact with the high tension wires, his experience at the substation and the plainly visible and long existing connection of the wires with the transformers could have left him in no doubt that they were

charged with electricity, and it would have been highly imprudent for him to act on the assumption that he could raise the aerial pole and wire against the electric wires without risk of personal injury. His inattention to the overhead danger was doubtless due to temporary forgetfulness of its presence, but that would not render his conduct other than negligent, unless his mind was momentarily diverted from the peril by some special and adequate cause, of which in this case there is no proof. 20 *R. C. L.* 110; *Reynolds v. Los Angeles Gas etc. Co.,* 162 Cal. 327, Ann. Cas. 1913D, 34, 31 L. R. A. (N. S.), 896; *Knoxville v. Cain,* 128 Tenn. 250, Ann. Cas. 1915B, 762, 48 L. R. A. (N. S.), 628. The failure of the decedent to observe ordinary care for his protection from a danger with which he must have long been familiar is clearly shown by the uncontradicted evidence in the record. It is a decisive fact which must be given its legitimate effect as against the recovery sought in this action.

The cases cited in the brief of the appellants involved facts which were materially different from those controlling the present decision upon the question we have discussed. In principle our conclusion is supported by the cases of *Cumberland v. Lottig,* 85 Md. 42; *Fulton Building Co. v. Stichel,* 135 Md. 542, and *Texas Co. v. Wash., B. & A. R. Co.,* 147 Md. 167.

The other exception relates to the action of the trial court in granting a motion of the defendant to strike out the statement of a witness for the plaintiffs that the wires in question were like "an ordinary telephone line in general appearance." The court, however, ruled that the witness could describe the wire, and he then testified that in his opinion it was No. 1 bare copper wire, that it was dull from exposure to the weather, and that it had twice the diameter of wire ordinarily used for telephone lines. The requirement by the court of a specific description of the wires in lieu of the general comparison objected to was justified.

*Judgment affirmed, with costs.*

OFFUTT, J., concurs in the conclusion.