C. C. McKINNEY, Appellant,

v.

**APPALACHIAN ELECTRIC POWER COMPANY, a corporation, Appellee.**

No. 7714.

United States Court of Appeals Fourth Circuit.

Argued Oct. 21, 1958.

Decided Nov. 12, 1958.

Arthur Ritz Kingdon and Ray Toler, Mullens, W. Va. (Frederick T. Kingdon, Mullens, W. Va., on brief), for appellant.

Frank L. Smoot, Bluefield, W. Va. (Sanders, Smoot & Sanders, Bluefield, W. Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and BRYAN, District Judge.

### SOBELOFF, Chief Judge.

This is the plaintiff's appeal from an adverse judgment in a suit for damages for personal injuries. It was docketed in a state court of West Virginia, removed to the federal court and there tried by the District Judge, no jury trial having been prayed as provided in Rule 38 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

While carrying a television antenna mounted on a ten-foot pole across the defendant's non-exclusive right of way on a mountainside in West Virginia, the plaintiff was severely burned when the antenna brushed against the defendant's uninsulated 13,200-volt electrical wire which was suspended about fourteen and one-half feet from the ground. Suit was brought upon two separate theories of liability—first, violation of a statutory duty; second, common law negligence.

Section 232 of the National Electrical Safety Code, which has the force of statutory law in West Virginia,[1] provides that:

"The vertical clearance of all wires above ground in *generally accessible places* or above rails shall (as to open supply line wires and service drops conducting 750 volts to 15,000 volts) be no less than the following:

\* \* \* \* \* \*

"(5) Spaces or ways accessible to pedestrians only . . . 15 feet." (Emphasis supplied.)

It is conceded that the defendant's wires at the place where the plaintiff met injury were less than fifteen feet high. The District Court held that it was not a "generally accessible place" within the meaning of Section 232, and further that the defendant owed the plaintiff no common law duty to maintain the wires higher than the existing level of fourteen and one-half feet.

The basic facts are substantially undisputed. The defendant power company supplies electricity to the city of Corinne and other communities in a mountainous area of southern West Virginia. The city itself is in a valley at the bottom of Corinne Mountain. A public highway runs between the city and the base of the mountain. While the difference in elevation between the highway and the top of the mountain is only eight hundred feet, the distance up the mountain is seventeen hundred feet. Before 1932, two high voltage circuit lines of 88,000 and 13,200 volts, respectively, were constructed by the defendant. Beginning at the defendant's substation in the valley, these lines connect with a steel high tower (Tower 2) midway up the mountain. From that point, the 88,000-volt line veers slightly to the left and extends 1,000 feet to Tower 3 at the top of the mountain, the line continuing at a minimum height of eighty feet above the ground. The 13,200-volt line, however, leaves Tower 2 and, instead of continuing to Tower 3, connects to wooden poles, which are substantially lower than the towers. These poles continue up

---

1. West Virginia Code of 1955, Sec. 2554; Regulation 12 of the "Rules and Regulations of West Virginia Public Service Commission for Government of Electric Utilities."

the mountain in a direction generally paralleling the 88,000 volt circuit. Pole No. 30 is the first pole above Tower 2; the next pole, No. 31, is farther up the mountain but seventy-five feet below Tower 3; and Pole No. 32 is located over the top of the mountain, past Tower 3. The plaintiff's injuries occurred between Poles No. 31 and No. 32, about sixty feet from Tower 3. The defendant's non-exclusive right of way under this 13,200-volt line is one hundred feet wide and was covered with a dense growth of shrubs and saplings approximately ten feet high. The defendant had last cut the undergrowth about eighteen months before the event out of which the litigation arises.

Because of the city's low elevation, television reception is poor. Consequently, since 1951 many persons have constructed and maintained TV antennae systems on the mountain for residents of Corinne in the valley below. These systems are installed by locating TV antennae on the mountain and running cables and transmission lines from the antennae down the mountain to a central point in the city, and thence into the homes. In 1953 the plaintiff constructed his own antenna system on the mountain to service sixteen subscribers in the community.

Pedestrian travel on the mountain is normally limited to seasonal berry pickers, hunters and, at an increasing rate in recent years, those who maintain TV antennae and come to inspect their equipment about once a week. There are well-defined paths on the mountain, and one narrow road passes near the base of Tower 2. Although most of the TV systems are located in the Tower 2 area more than five hundred feet from the scene of the accident, some antennae are in close proximity to Tower 3, and one TV operator's cable crosses the defendant's right of way between Poles No. 31 and No. 32, where the plaintiff was injured.

On a day in June, 1956, the plaintiff removed one of his antennae near Tower 2 in order to relocate it in a place where a clearer signal could be obtained. After mounting the antenna on his ten-foot pole, he proceeded with it to a point where he eventually picked up a satisfactory signal near Tower 3. To avoid static interference from the power line, he decided to place the antenna farther across the mountain. Accordingly, he started to traverse the defendant's right of way near Tower 3 and, because of the thick undergrowth, he elevated the pole above his head to protect the antenna. The plaintiff insists that he was unaware that the 88,000-volt line and the 13,200-volt line separated at Tower 2, and was under the impression as he moved away from the tower that he had cleared the lines, which he was led to believe were in any event eighty feet overhead and, therefore, no source of danger. He testified that due to the height of the undergrowth and the misleading appearances, he did not see the wire or the poles. The electric shock which he sustained when his antenna brushed against the 13,200-volt line rendered the plaintiff unconscious, and he suffered third degree burns to his right hand, resulting in a permanently atrophied and hypersensitive thumb.

Our problem in respect to subsection (5) of Section 232 concerns the interpretation of the phrase "spaces or ways accessible to pedestrians only." The defendant points to the introductory sentence of the Section, which pertains not alone to spaces and ways accessible to pedestrians only, where the prescribed elevation is fifteen feet, but also to streets, alleys, and roads in urban and rural districts, and to driveways to residence garages, where a twenty-foot elevation is required. The opening sentence delineates the over-all coverage of the entire section and speaks of "generally accessible places." From this the defendant argues that the phrase in subsection (5), "spaces or ways accessible to pedestrians only," means spaces or ways that are generally accessible. Adopting the defendant's view, we are still left with the problem of interpreting the word "generally" itself. It may be granted that to give a reasonable con-

struction to the word "accessible" in subsection (5), the notion of accessibility is not to be stretched to include every place to which it is physically possible for someone somehow to gain access. On the other hand, it is not to be construed so narrowly as to limit the protection of the statute to places that are accessible to all classes of the public.

As heretofore indicated, the District Judge found that the place of the injury was not a "generally accessible place" within the meaning of that term as used in Section 232. At one point in his opinion, the District Judge did define a generally accessible place as one "where people not only can go, but where they may be expected to go, at least sometimes." However, in applying the statute to the facts, he gave special emphasis to the absence of "avenues and paths" across the defendant's right of way. We think that this application of the law was erroneous because it insisted upon too high a degree of accessibility.

■ The manifest purpose of subsection (5) is to protect pedestrians against dangers potentially arising from the maintenance of high voltage wires. Electrical lines are frequently located in sparsely populated rural areas where pedestrian movement may be limited to certain classes of users. We think that the statute applies not only to spaces or ways available to all members of the public; it is sufficient if a segment of the pedestrian public frequents the area. Nor is the absence of well-defined roadways or paths controlling. In this case there is uncontroverted testimony of activities of hunters and berry pickers on Corinne Mountain and, in recent years, the increased utilization of the mountain for the maintenance of TV facilities. It cannot be supposed that the defendant was ignorant of these extensive activities. Not only did the defendant's maintenance crews frequent the area, but it was testified that on occasion the defendant's line foreman helped the plaintiff relocate his antennae. Moreover, there is no suggestion that the mountain, and particularly the Tower 3 area, is not accessible on foot. Indeed, the steepest part of the mountain is below the Tower 2 area. Upon our interpretation of Section 232, as distinguished from the stricter construction given by the District Judge, there was substantial evidence to support a finding that the plaintiff was injured in a place within the meaning of the statute.

■ There was also testimony to show that the top of the antenna brushed the wire, and that if the wire had been several inches higher, this would not have occurred. If the statute is applicable, then a violation proximately causing an injury gives rise to a cause of action. State Road Commission v. Ball, 1953, 138 W.Va. 349, 76 S.E.2d 55, 58.

■■ The second ground upon which this suit is prosecuted is the defendant's alleged negligence, irrespective of the statute. The plaintiff charges the defendant with failure to exercise reasonable care to avoid a foreseeable danger. While the statutory and the common law causes of action are legally distinguishable, the factors of decision are closely related. In determining the common law duty, as in applying the statute, some account must be taken of the extent of the use made of the general area by at least certain parts of the public. The extent of pedestrian use of the surrounding area and the likelihood that someone might cross the defendant's non-exclusive right of way and thereby become exposed to danger bear upon the element of foreseeability. Love v. Virginia Power Co., 1920, 86 W.Va. 393, 103 S.E. 2d 352, 354. No exception could be taken to the District Judge's statement of the law that the defendant's liability depends upon the reasonable foreseeability of the injury. Northern Virginia Power Co. v. Bailey, 1952, 194 Va. 464, 73 S.E.2d 425, 428; Fisher v. Flanagan Coal Co., 1920, 86 W.Va. 460, 103 S.E.2d 359, 360; Restatement, Torts, Sec. 302, Comment c at 816 (1934 Ed.). But in deciding the question of common law negligence, the District Judge was undoubtedly influenced, as he evidently was in applying the statute, by an undue constriction

of the term "accessible." We think that a basis exists for finding negligence in the combination of defendant's permitting the space under the highly charged wires to become overgrown so as to obscure the vision of persons known to frequent the general area and, in these circumstances, maintaining wires so low as to constitute a danger.

Being of the opinion that the Court's findings were influenced, if not induced, by an erroneous interpretation of the statutory and common law duty of the defendant, the judgment must be set aside. See: Cleo Syrup Corporation v. Coca-Cola Co., 8 Cir., 1943, 139 F.2d 416, 418, 150 A.L.R. 1056, certiorari denied 1944, 321 U.S. 781, 64 S.Ct. 638, 88 L. Ed. 1074; Carpenter v. Ohio River Sand & Gravel Corp., 1950, 134 W.Va. 587, 60 S.E.2d 212, 215.

The defendant contended in the District Court and here that the plaintiff himself was negligent in not realizing when he entered the defendant's right of way that a circuit line continued from Tower 2 up the mountain at a reduced elevation on the wooden poles. The defendant relies on the fact that the right of way had been cleared in December, 1954, affording an unobstructed view of the poles and wires for many months thereafter. It argues that since the plaintiff visited the mountain during that time, he must have noticed them, and should be charged with this knowledge in June, 1956. It is not disputed, however, that for an appreciable period before the time of the injury in June, 1956, the poles, spaced several hundred feet apart, and the wires, were not readily visible from anywhere on the mountain and especially not to a person who might enter the right of way covered by a growth ten feet high. On this issue, the Court concluded that the defendant had not met its burden of showing that the plaintiff knew or should have appreciated when he carried the antenna aloft, that he was near a low-hanging power line. See Restatement, Torts, Sec. 289, Comment f, at 766 (1934 Ed.).

Since a retrial is necessary on the issue of the defendant's negligence, on both theories alleged by the plaintiff, we think it fair for the question of the plaintiff's contributory negligence to be decided at the same time by the trier of the facts on all the evidence. The District Court, allowing for a possible reversal, assessed the plaintiff's damages at $7500.00. We think, however, that the question of damages should also be determined in the retrial of the case, in the event of a verdict for the plaintiff. The questions are so closely intertwined that separate determinations would be undesirable.

The judgment will be reversed and the case remanded for a new trial.

Reversed and remanded.