SOUTHERN MARYLAND ELECTRIC COOPERATIVE,
INC. *v.* BLANCHARD

[No. 227, September Term, 1964.]

*Decided July 14, 1965.*

*Motion for rehearing filed August 12, 1965, denied September 17, 1965.*

The cause was argued on March 3, 1965 before Prescott, C. J., and Horney, Sybert, Oppenheimer and Barnes, JJ., and reargued on June 2, 1965 before Prescott, C. J., and Ham-

mond, Horney, Marbury, Sybert, Oppenheimer and Barnes, JJ.

*John A. Beck* (on both arguments), with whom was *Robert E. Wigginton* on the brief, for appellant.

*Ferdinand J. Mack* (on both arguments), with whom were *Arthur J. Hilland, James E. Hogan* and *Paul J. Bailey* on the brief, for appellee.

Prescott, C. J., delivered the majority opinion of the Court. Horney, Oppenheimer and Barnes, JJ., dissent. Dissenting opinion by Horney, J., at page 492 *infra*.

In this tort action brought by Rudolph W. Blanchard (plaintiff-appellee) against the Southern Maryland Electric Cooperative, Inc. (defendant-appellant) for the injuries he sustained when a television antenna he was holding came in contact with an uninsulated electric wire belonging to the cooperative, the jury found for the plaintiff in the sum of $25,000 and the defendant appealed from the judgment entered on the verdict.

Several questions are raised, but, in the view we take of the case, only one needs to be answered: Was the appellee guilty of contributory negligence as a matter of law?

On January 4, 1963, the plaintiff, an intelligent signalman in the United States Navy with unimpaired vision, rented a trailer in Hood's Trailer Park in St. Mary's County. While living in the rented trailer, he purchased a new trailer from the owner of the park. This new trailer was delivered during the latter part of January, and it was placed in the same row of trailers as the one then being occupied by the plaintiff. Shortly thereafter, he and his family moved into the new one. On or about February 7, 1963, just a couple of days before his accident, the plaintiff obtained a 4″ by 4″ aluminum pole, 16′ in length, and borrowed a post hole digger from Mr. Hood, who operated a service station and general store adjacent to the trailer park. Plaintiff dug a hole 3′ deep and erected the pole at the rear of the trailer in order to run a telephone line into his bedroom window. After being placed in the ground, the pole stood approximately 13′,

4″ in height, and it was approximately 2′ from the rear of the trailer. The top of the pole was about 3′ above the top of the trailer, which was 10′ from the ground. Plaintiff testified that he arrived home about 5:00 p.m. on the day he erected this pole. Arranging to have Hood obtain the pole, taking the pole from the store to his trailer, and going to Hood's garbage shed and his barn to obtain the necessary tools required several trips to and from his trailer to Hood's store and its vicinity. The whole operation of erecting the pole consumed some 30 to 40 minutes. During this time, plaintiff was working almost immediately under the wire which caused his injury.

This wire was 22½′ above the ground. Four feet below it was a neutral, or ground, wire. These wires ran athwart the top of the trailer at a point some 18″ inside the rear thereof. Below these wires were other electric ones close to the top of the trailer, which were insulated. The latter are not involved in this suit. The wires had been placed there several years before upon the establishment of the trailer park, and had remained there, in plain, unobscured view, ever since.

On the morning of February 9, 1963, the plaintiff purchased a new television set. During the early afternoon, he went to Hood's general store and purchased a metal antenna kit. Thereafter, he borrowed a 16′ aluminum ladder and sufficient tools (all of which he personally carried to the rear of the trailer) to assemble and install the antenna. These operations required a "few" trips to and from the trailer to the store and tool sheds. He assembled the antenna on the ground near the base of the telephone pole, almost directly under the wire from which he received his injury. When assembled, the antenna top consisted of two sets of prongs measuring approximately 3′ 8½″ each in length. The antenna top was attached to a metal pole 10′ 1½″ long. The plaintiff then attached metal brackets near the top of his telephone pole to hold the metal pole of the television antenna.

Plaintiff had leaned the 16′ ladder against the rear of the trailer, and, after assembling the antenna, he grasped it near the bottom of the metal pole and started backing (or "sidling") up the ladder. He intended to insert the lower end of the antenna pole into the bracket at the top of the telephone pole. In

ascending the ladder he noticed the several insulated wires running over the top and near the rear of his trailer and said he took precautions to avoid them. When his hands were at a level near the top of the 13' telephone pole, he swung the 10' metal antenna pole upward for the purpose of inserting the end into the top bracket on the telephone pole. During this maneuver one of the prongs at the top of the antenna came into contact with the defendant's electric wire, and resulted in the injuries complained of. There were no witnesses to the accident.

Plaintiff testified that at no time during his over-a-month's residency at the trailer park, which included the time of the installation of the telephone pole and the assembly and attempted erection of the antenna, did he ever see, or become aware of the wire which caused his injury. He was, however, fully aware of the dangers of electricity and electric wires; and had received extensive training in the use of his eyes as a signalman.

In attempting to explain his not seeing the wire, the plaintiff testified that during his residency at the trailer park he had usually left for work early in the morning and returned therefrom rather late; that the weather had not been conducive to exploration; and that he had been confined to his trailer by the flu for about two weeks and had not been able to assist in the moving from one trailer to the other.

Much stress is laid in appellees' brief upon the sun's preventing his seeing the wire, and a minority of this Court feels that this factor is the one which should take the question of contributory negligence to the jury; hence it seems appropriate to set forth all of appellee's testimony relative thereto. He stated that the accident occurred at about 3:00 p.m. on a Saturday afternoon, when the weather was "cloudy, broken clouds." Later he said the sun was out because he remembered "it glaring into my eyes when I *first* [italics added] looked up in that direction [towards the wires]," and the "sun was shining off and on." Thereafter he admitted: "I didn't look straight up [when he was ascending the ladder—almost straight up was where the wire was]. I had no reason to look straight up. I was interested in the top of the pole [upon which he intended to place the antenna]." He further testified as follows: "[When ascending the ladder] all I had my eyes on was this pole here with the brackets on it

because I had to figure out how far up the ladder I had to go in order to get the [antenna] pole in the bracket." And when asked the question, "You were not looking at the sun [as you climbed the ladder and got ready to insert the antenna], were you?," he flatly replied, "Not at that time, no sir." Further he stated that in his pre-trial deposition, although he had testified "describing what [he] did and what happened [at the time of the accident]," he did not "mention the sun or mention the sun getting in [his] eyes."

For the purposes of this case, we assume, without deciding, that the defendant was guilty of primary negligence, and proceed to a consideration of whether the evidence established that plaintiff was guilty of contributory negligence as a matter of law. We are constrained to hold that our previous decisions, as well as the authorities elsewhere, impel a ruling that he was.

It may readily be conceded that as a general rule the questions of primary and contributory negligence are for the jury (there are innumerable Maryland cases to this effect). However, there is a qualification to this general rule which is as well known as the rule itself; namely, that in certain cases the facts establish that a defendant has been guilty of negligence, or a plaintiff has been guilty of contributory negligence, as a matter of law. There are likewise many Maryland cases to this effect. See for example the Annotation in 69 A.L.R. 2d 9, § 15 (a) and (d), and § 23, where most of the Maryland cases dealing with power line injuries mentioned below are annotated.

Although there is much sound and widely-recognized authority for the proposition that a person of ordinary intelligence, with unimpaired eyesight, who says that he did not see an object which, had he used his senses, he, in the nature of things, must have seen, is not to be credited (for example, see *Fulton Building Co. v. Stichel,* 135 Md. 542), we do not need to rest our decision here upon that proposition, for, irrespective of whether plaintiff had *actual* knowledge of the presence of the wire, the law, under the circumstances here involved, *charged* him with such knowledge.

It is a fundamental principle of negligence law that a person must use his Providence-given senses to avoid injury to himself. This has been recognized since time immemorial. In the

case of *Fulton Building Co. v. Stichel, supra,* Chief Judge Boyd, for the Court, said:

> "If he had used his eyes, * * * he could have seen the spikes * * *. * * * He says he did not see any spike but according to the principles announced by the authorities in this State, as well as elsewhere, as there is nothing to show that his sight is impaired, or he was not a man of ordinary intelligence, he cannot avoid the effect of his contributory negligence by saying he did not see an object which, if he had used his senses, he in the nature of things must have seen, and he cannot be credited when he says he did not see it. *Helm's Case,* 84 Md. 515, 526; *Md. Elec. Ry. Co. v. Beasley,* 117 Md. 270, 279; *Sullivan v. Smith,* 123 Md. 546, 556; *Mayor, etc., of Baltimore v. Bassett,* 132 Md. 427, 431, and many other cases to same effect. *If he did not use his senses for his protection, as he should have done, he was guilty of negligence."* (Italics added.)

And in *Texas Co. v. Wash., B. & A. R. Co.,* 147 Md. 167, this Court stated:

> "This contributory negligence [as a matter of law] arises from the failure of the plaintiff to use due care to avoid dangers which he knows * * * exist * * *, or because the dangers are so obvious that any ordinarily prudent man would see them and guard against them."

This is the underlying principle of the long line of automobile negligence cases, wherein it has been often stated that a duty to look implies a duty to see what is in plain sight; or as Judge Thomsen states the principle in a heading, "Looking and not seeing what he must have seen if he had looked—testimony not worthy of consideration." See the long line of Maryland cases cited at p. 262, Thomsen, *A Classified Index of Motor Vehicle Cases* (3rd ed.).

And the above principles have been specifically applied to cases involving injuries from electricity by this Court, the Fed-

eral Courts, and in innumerable cases by the Courts of our sister States.

In the early case of *Cumberland v. Lottig,* 95 Md. 42, the Court stated that the mother of a 6 year old child "either saw or could have seen the wires [some 18 inches from the roof of her home] in time to have avoided placing, or allowing her child to lie down immediately under the wire." It then held that irrespective of the question of primary negligence, the injured child, if old enough to understand, was guilty of contributory negligence as a matter of law, and if he were not old enough to understand, the mother was contributorily negligent as a matter of law, which was imputable to the child and prevented his recovery. In other words, the Court held that whether the mother or child had *actual* knowledge of the location of the wire, they were chargeable with such knowledge because it was in plain view.

*State v. Consolidated Gas Co.,* 159 Md. 138, involved a party who was erecting, or moving, an aerial. He threw a wire over another one conducting electricity and was electrocuted. In holding that the deceased had been guilty of contributory negligence as a matter of law, the Court stated:

> " 'He must use reasonable care in examining his surroundings, to observe and take such knowledge of danger as can be attained by observation. In performing the duties of his place, he is bound to take notice of the ordinary operation of familiar laws and to govern himself accordingly. If he fails to do so the risk is his own.' *Texas Company v. Wash., B. & A. R. Co.,* 147 Md. 167; *Fulton Bldg. Co. v. Stichel,* 135 Md. 542, 548; *Baltimore v. Bassett,* 132 Md. 427, 431; *Sullivan v. Smith,* 123 Md. 546, 556; *Maryland Electric Ry. Co. v. Beasley,* 117 Md. 270, 279; *Helms v. Balto. Traction Co.,* 84 Md. 515, 526."

In the above case, as the man was killed, no one could testify as to his actual knowledge of the presence of the wire or its dangerous propensities. However, the Court held that from the facts and circumstances the deceased must have known of the location of the wire, as it was in plain view, and by its ruling

charged him with such knowledge, and also charged him with knowledge of its dangerous character. A similar ruling was made in *State v. Gas & Elec. Co.,* 155 Md. 660, where an aerial wire attached to a pole which was being erected came into contact with defendant's high tension wire passing over the deceased's lot.

From these last two cases, alone, it would seem necessarily to follow that if the fortunate young plaintiff here had been so unfortunate as to have been electrocuted, his use-plaintiffs would have been barred from recovery, as a matter of law, on the ground of contributory negligence of the deceased.

In *Thompson v. Cons. Gas Electric Light & Pow. Co.,* 111 F. Supp. 719, the mast of plaintiff's yacht came into contact with defendant's high voltage wire. Judge Chesnut quoted from the *LeVonas* case (184 Md. 16) as follows: " 'In accordance with these basic principles, the law does not require that a person, who maintains even so deadly an instrumentality as a high voltage electric wire, shall anticipate at his peril every possible fortuitous circumstance under which some person might make a contact with the wire, resulting in injury or death.' * * *" He also stated: "Whether or not he [plaintiff] actually knew the clearance of the cable was 34 feet, he was chargeable with that knowledge for the purposes of navigation," he was further "chargeable with the information contained on the revised chart," and was also "chargeable" with the dangerous nature of the cable; hence the plaintiff was contributorily negligent as a matter of law.

The cases making similar holdings are legion. A few follow with brief outlines of the facts and rulings. *Rudd v. Publ. Service Co.,* 126 F. Supp. 722 (D. C., N. D. Okla. 1954). High tension uninsulated wires of company were located 24 feet above a public street. Three men, after unloading a television antenna, attempted to raise the same. It was held that the company was not negligent in not insulating its wires or in not posting warning signs. But even if the company were negligent and the men who were killed had no knowledge of the presence of high voltage in the wire, they were "conclusively" shown to be contributorily negligent as a matter of law.

As the case of *Craft v. Fordson Coal Co.,* 171 S. E. 886 (W.

Va.) cites and quotes from the Maryland case of *Fulton Bldg. v. Stichel, supra,* and contains many aspects similar to the case at bar, we shall quote from it. An 18 year old boy sought to recover damages sustained by him while playing on a building leased by his father as a garage. The damages resulted from contact with uninsulated high voltage wires 16 feet above the ground and 3 feet above the ridge of the roof of the building. The plaintiff claimed he did not see nor did he know the wires were there. The court stated: "If he had looked there is no question but what he could have seen these wires and his failure to do that does not relieve him from the duty to exercise ordinary care for his own protection." In holding that a directed verdict for the defendant was proper, the Court further stated:

> "The situation here must, of course, be regarded prospectively and not in retrospect. The wires were sixteen feet from the ground and at a place not frequented by the public at all, and to which an adult would not ordinarily be expected to go except to repair the roof. A housetop is itself a precarious place. Defendants had the right to assume that one mounting even to the flat part of the garage roof would make observations for his own safety. In such case the wires would be almost level with his vision, but a short distance from him and necessarily discernible. Therefore it could not be reasonably anticipated that a person on the roof would encounter the wires inadvertently. It may be admitted that plaintiff had the legal right to climb upon the garage, but that right alone did not require the coal company to insulate or elevate the wires, since they were plainly visible. Such a requirement would make the company an insurer (a burden not imposed by law).

\* \* \*

> "The law requires no one to anticipate an act so unobservant of surroundings by one beyond the age of childhood. Nutter v. C. & O. Ry. Co. (W. Va.) 166 S. E. 815, 817. The law ordinarily charges a person of unimpaired vision with seeing an object, 'which, if

he had used his senses, he in the nature of things must have seen.' Fulton Bldg. Co. v. Stichel, 135 Md. 542, 109 A. 434, 437. Accord; Johnson v. Washington Route, 121 Wash. 608, 609-611, 209 P. 1100; Seabridge v. Poli, 98 Conn. 297, 301, 119 A. 214; De-Honey v. Harding (C.C.A.) 300 F. 696."

In *Arkansas Power & Light Co. v. Hubbard,* 28 S. W. 2d 710 (Ark.), the Court held that the plaintiff, who was injured when a pole which she was assisting to raise came in contact with defendant's uninsulated wire 15 feet above ground, was "chargeable" with knowledge that the wires were uninsulated since they were in plain view, and she was also chargeable with knowledge that the wires were dangerous; consequently, she was guilty of contributory negligence as a matter of law.

The Court in *Hines v. Consumers' Ice & Light Co.,* 294 S. W. 409 (Ark.) held that a lineman was "chargeable" with knowledge of defective insulation on a light wire, "which was in plain view near where he was working." Similar rulings were made in *May v. Ill. Power Co.,* 96 N. E. 2d 631 (Ill. 1951), in *Murphy v. Iowa Elect. Co.,* 220 N.W. 360 (Iowa) ("any adult, sane man could see and would know this"), and in *Hamilton v. Laclede Electric Co-op.,* 294 S. W. 2d 11 (Mo. 1956); *Watson v. Virginia Electric and Power Co.,* 100 S. E. 2d 774 (Va. 1957) (decedent saw or ought to have seen the wire had he exercised ordinary care).

29 C.J.S. *Electricity,* § 53, using almost the exact language used by Chief Judge Boyd in *Fulton Building Co., supra,* states the rule thus: "Also the law ordinarily *charges* [emphasis added] a person of unimpaired vision with seeing an object which, if he had used his senses, he, in the nature of things, must have seen."

It is clear to us that the facts of this case not only justify a ruling that appellee was negligent as a matter of law, but impel it. Appellee's testimony may well bring the case within the scope of the rule that his statement that he did not know the wire was there is not worthy of credence. Any man, who lives in a trailer, equipped with telephone, electric lights and television, for over a month; who goes to and from work; who

makes a number of trips to and from Hood's store, barn, and garbage shed; who moves out of one trailer and into another in the same row; who works for some 40 minutes directly under the wire complained of and installs, by himself a 16' metal post in an upright position; who totes a 16' metal ladder to the trailer and places it in an upright position (almost directly under the wire) leaning against the trailer; who assembles a 10' antenna (still almost directly under the wire) ; and who carries the 10' antenna to a position, where, by simple arithmetic, it had to be at least 2½ feet above the top of the trailer, and claims he was unaware of the presence of a wire going directly over his trailer (which at the time of the accident could not have been over 8 to 10 feet from his eyes) probably should not "be credited" to use the words of Chief Judge Boyd quoted above. But, as previously indicated, the question of appellee's contributory negligence does not have to rest upon whether or not he had actual knowledge of the location of the wire, for, under the authorities set forth above, the law rightfully charged him with such knowledge, because of the facts, as established by his own testimony. Therefore, being charged by law with the knowledge that the wire was there, his conduct cannot be characterized otherwise then careless and reckless.

It would, indeed, be an anomalous and incongruous ruling to hold that a plaintiff can take a 10' aluminum antenna up a 16' aluminum ladder for the purpose of installing it atop a 16' aluminum post (all well-known conductors of electricity) and actually get the top of the antenna at least 22½ feet from the ground and assign as his only reason for not looking up and examining what the situation was with reference to the upper part of the antenna, "I had no reason to look straight up," and still recover for damages resulting from his bringing the antenna into contact with the wire 22½ feet from the ground. It would mean, in actuality, that the doctrine of contributory negligence had been expunged, at least for the purposes of this case, from the general law of negligence.

The cases of *McKinney v. App. Elect. Power Co.*, 261 F. 2d 292 (C.A. 4), and *Muck v. Snohomish County Public Utility Dist. No. 1*, 247 P. 2d 233 (Wash.), quite heavily relied upon by the appellee, are both distinguishable upon their facts.

In *McKinney,* it was "not disputed * * * that for an appreciable period before the time of the injury * * *, the [defendant's] poles, spaced several hundred feet apart, and the wires, were not readily visible from anywhere on the mountain and especially not to a person who might enter the right of way covered by a growth [of underbrush] ten feet high." The Court held that the defendant had failed to meet its burden of showing the deceased knew, or should have known, that he was near a low-hanging (14½' above ground) power line.

In *Muck,* the deceased had gone to a home, for the first time, to help a fellow worker carry a television set into the home. Upon approaching the house, the truck in which they were riding stalled. Muck stayed at the truck, and his fellow worker proceeded to the house, and was putting up a temporary 25' antenna close by it. Muck got the truck moving, and, as he drove up to the house and walked over to where his companion was, the companion was holding the 25 foot antenna pole upright. Wanting to secure the same near the top of the house, he asked Muck to "take hold of this pole, while I go up on the ladder and tie it to the antenna." Muck did take hold of the pole, and very shortly thereafter was electrocuted when the antenna came into contact with defendant's wire, which ran directly over the house (the exact height of the wire is not stated in the Court's opinion; however, it seems to have been over 21½' and under 27½'). There was no showing that Muck knew the wire was there. Under the above circumstances, the Washington Court held that the question of whether or not Muck was guilty of contributory negligence was one for the jury. It is obvious that the facts in that case differed widely from those in the case at bar.

> *Judgment reversed, without a new*
> *trial; appellee to pay the costs.*

HORNEY, J., filed the following dissenting opinion, in which OPPENHEIMER and BARNES, JJ., concurred.

The majority, in ruling that the plaintiff was contributorily negligent as a matter of law on the theory that he was chargeable with knowledge of an existing dangerous condition irre-

spective of whether he had knowledge thereof, in effect hold that electric power companies cannot be held liable for injuries sustained by one who comes in contact with uninsulated wires that can be seen regardless of where such wires are erected or how negligently they are maintained. To me, charging the plaintiff with knowledge of the presence of uninsulated high voltage wires, under the facts and circumstances of this case, necessarily places an unreasonable burden on all persons to make themselves aware of the presence of all electric wires regardless of where such wires may be and regardless of the circumstances under which they come in contact therewith.

In the case at bar, the plaintiff, who was aware of the dangerous characteristics of electricity, testified that although he had observed the several insulated wires a few feet above his trailer and carefully avoided them, he did not see the uninsulated wires some twelve and one-half feet above the top of the trailer and did not know they were there. Even if he had seen the electric wires he claimed they would have been indistinguishable from the guy wires which were also not insulated. He explained that he could not and did not see the uninsulated wires because the sun, which had been appearing off and on the day of the accident, came out again and was shining in his eyes as he was attempting to hoist the antenna into place. In further explanation of the reason for not having seen the high voltage wire before he was injured, it was shown that the plaintiff had resided in the trailer park for only a month. During that time his duties and the weather were not conducive to an exploration of his surroundings. He left home at daybreak and returned at nightfall, and the weather for the most part had been inclement. He and his family took a trip over one of the weekends. Later he was housed for two weeks with the flu and was unable to help his wife move from the rented trailer they first occupied to the trailer they subsequently bought. He had not examined the site of their own trailer before it was put in place and he was not able to assist with blocking it up or making the water, sewer and electrical connections. He and his family had occupied the new trailer for only a week before the injury occurred. Other than himself, there were no witnesses to the accident.

While the defendant did not admit that it was primarily negligent, several of its employees frankly stated that in their opinion it was not the better practice, because of potential dangers to occupants, for the defendant to maintain uninsulated high voltage wires over a row of trailers, and one of them, whose duty it was to inspect and report such conditions as appeared to be hazardous and not in conformity with good engineering practice, had recognized the existing dangerous condition but failed to report the hazard to his supervisor.

The majority has placed considerable emphasis on the fact that two days before the accident the plaintiff had worked under the wires during the course of erecting a pole in order to avail himself of telephone service. Additional stress is placed on the fact that the plaintiff neither mentioned the sun nor stated that it had blinded him in his pretrial deposition. As to the first fact, the record indicates that the pole was erected sometime after five o'clock in the afternoon and there was no evidence with respect to visibility or the lack of it at that late hour on the seventh day of the second month in the year. As to the second fact, the plaintiff testified that during the taking of his deposition he was never questioned as to whether he had seen the wires he came in contact with or as to what had prevented him from seeing them. Be that as it may, the plaintiff consistently testified on direct and cross-examination that he had not seen the dangerous high voltage wires directly over his head, and there was no testimony to the contrary.

Taking into consideration the comparatively brief length of time he had lived in the trailer camp prior to the accident and particularly the almost complete absence of opportunity to observe his surroundings, due to being away at work most of the daylight hours, to taking a trip over one of the weekends, to being ill for more than a fortnight, to the consistent inclemency of the weather and to his inability to assist with making the water, sewer and electric connections for the new trailer, the real issue, in my opinion, is whether the plaintiff, having looked and missed seeing the high voltage wires because of the glaring sunlight, can be said to have been guilty of contributory negligence. To me, the conclusion that he was negligent is clearly wrong if not incredible. For where, as here, there was

evidence that the plaintiff exercised ordinary care in ascending the ladder but, as the result of an intervening cause he had not anticipated, was prevented from seeing what he otherwise could or should have seen had not the sun interfered with his vision, the question as to whether or not the plaintiff should have seen the dangerous overhead wires was a jury question. As was said in *B. & O. R.R. Co. v. Hendricks*, 104 Md. 76, 86, 64 Atl. 304 (1906), "there is a broad difference between not seeing an object because one does *not* look, and not seeing it though one *does* look." Failure, therefore, to see what is there when one looks may be due, as it was in this case, to causes other than the lack of due care. In *State use of Bell v. Eastern Shore Gas and Electric Co.*, 155 Md. 660, 142 Atl. 503 (1928),[1] where the high voltage wire passed directly over the property of the deceased, it was recognized (at p. 664, that his "inattention to the overhead danger was doubtless due to temporary forgetfulness of its presence, but that would not render his conduct other than negligent, *unless his mind was momentarily diverted* from the peril by some special and adequate cause, of which * * * there [was] no proof." (Emphasis added.)

In *McKinney v. Appalachian Elec. Pow. Co.*, 261 F. 2d 292 (4th Cir. 1958), the question of whether the plaintiff knew or should have known of a low-hanging power line was said to be for the jury. Likewise, *Muck v. Snohomish County Public Utility Dist.*, 247 P. 2d 233 (Wash. 1952), is directly in point. In that case, which arose out of a fatal accident resulting from contact with electric wires during the erection of a television antenna, the question of whether the wires which could have been seen, should have been seen, was held to be for the jury. See also the cases collected in 69 A.L.R. 2d 9 (at p. 51) which hold the question of contributory negligence in a case such as this to be for the jury. The majority do not challenge the holding in *McKinney* that the power company failed to meet its

---

1. This case, which is cited by the majority as one of those in which the injured person was charged with knowledge of the existence of a high voltage wire, is clearly distinguishable from the case at bar in that there the deceased must have known of the existence of the wire since he had worked his garden under it for more than three years and had even repaired the wire on one occasion.

496

burden of showing that the deceased knew, or should have known, he was near a low-hanging power line which was not visible to one entering the right of way covered by a growth of underbrush. But they attempt to distinguish *Muck* by saying that there was in that case no showing that the deceased knew of the existence of the wire. That, however, as the record shows, was precisely the situation in the case at bar. Not only was there no showing that the plaintiff in the present case knew there were uninsulated wires higher overhead than the insulated wires a few feet above the trailer but there was other evidence that having looked he had been prevented from seeing the uninsulated wires by a circumstance beyond his control. Clearly, the question of whether or not the plaintiff was contributorily negligent was for the jury to decide. The jury found that he had not contributed to the serious injuries he sustained, and their verdict should not be disturbed.

Aside from this, since the plaintiff was without knowledge of the uninsulated overhead wires, all of the cases relied on by the majority are clearly distinguishable on their facts. In *Cumberland v. Lottig*, 95 Md. 42, 51 Atl. 841 (1902), where the electric wires were only eighteen inches from the roof on which the child was lying, the knowledge which the mother had or should have had of the dangerous character of the wires was imputed to the child. Likewise, in *State use of Bahner v. Consolidated Gas Co.*, 159 Md. 138, 150 Atl. 452 (1930),[2] where the deceased knew of the presence of the wires and the question was whether he knew or ought to have known of the hazard of

---

2. The quote within the quote from the opinion in State use of Bahner v. Consolidated Gas Co., 159 Md. 138 (taken from Linton v. Baltimore Mfg. Co., 109 Md. 404, 411, where a laborer employed in one part of a factory fell into a vat of boiling molasses in another part), relied on by the majority to support the proposition that the plaintiff in the case at bar was contributorily negligent does no more than restate the well known rule of law that one must use reasonable care to observe and take notice of obvious dangers. Since, however, there was no showing that the plaintiff had not used reasonable care, the question (as herein above stated) is whether he, having looked and missed seeing the overhead wires, can be said to have been contributorily negligent as a matter of law.

throwing a radio aerial wire over electric wires, it was properly held that the deceased was contributorily negligent.

As in the Maryland cases, the same is true with respect to the cases cited by the majority from other jurisdictions. In the cases of *Thompson v. Cons. Gas Elec. Lgt. & Pow. Co.,* 111 F. Supp. 719 (D.Md. 1953), *Arkansas Power & Light Co. v. Hubbard,* 28 S. W. 2d 710 (Ark. 1930), *Hines v. Consumers' Ice & Light Co.,* 294 S. W. 409 (Ark. 1927) and other cases [3] referred to by the majority in line with these three, the injured party had knowledge of the presence of the wires prior to the happening of the accident. In *Thompson,* contributory negligence was said to exist from the failure of the plaintiff, who was aware of the wires, to check the height of his mast, the tide and the charts of the area. In *Hubbard,* where the plaintiff was aware of the overhead wires, the question was whether she knew they were dangerous. In *Hines,* the plaintiff, who knew of the electric wires, was contributorily negligent in working as close to them as he did in repairing telephone lines. Also, in *Rudd v. Public Service Co.,* 126 F. Supp. 722 (N. D. Okla. 1954), where the plaintiffs apparently knew of the wires—there was no question as to whether their knowledge made them guilty of contributory negligence—they were held to be negligent in failing to make certain that their manner of handling an antenna would not result in it falling onto the surrounding electric wires.

In *Craft v. Fordson Coal Co.,* 171 S. E. 886 (W.Va. 1933), the plaintiff was said to be contributorily negligent in failing to exercise ordinary care in that he did not look before ascending the side of a building. In that case, however, there was no evidence, as there was in the case at bar, that the plaintiff looked but missed seeing the wires because of an intervening factor he had not foreseen.

In my opinion the judgment should be affirmed. Judge Oppenheimer and Judge Barnes concur in this dissent.

---

3. May v. Illinois Power Co., 96 N. E. 2d 631 (Ill. 1951), Murphy v. Iowa Elec. Co., 220 N.W. 360 (Iowa 1928), Hamilton v. Laclede Elec. Co-op., 294 S. W. 2d 11 (Mo. 1956) and Watson v. Virginia Elec. & Pow. Co., 100 S. E. 2d 774 (Va. 1957).