**Walter RAMOS, Individually and as personal representative of the Estate of Julio E. Ramos; Jamie R. Ramos, Plaintiffs–Appellants,**

v.

**SOUTHERN MARYLAND ELECTRIC COOPERATIVE, INCORPORATED, Defendant–Appellee.**

No. 92–1651.

United States Court of Appeals, Fourth Circuit.

Argued April 1, 1993.

Decided June 10, 1993.

William Joseph Carter, Carr, Goodson & Lee, P.C., Rockville, MD, argued (Paul J. Maloney, on brief), for appellants.

Phillip R. Zuber, Sasscer, Clagett & Bucher, Upper Marlboro, MD, argued, for appellee.

Before ERVIN, Chief Judge, WILKINSON, Circuit Judge, and HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

ERVIN, Chief Judge:

Walter and Jamie Ramos ("Plaintiffs") brought this action individually and as the personal representative of their deceased brother, Julio Ramos, seeking damages for injuries suffered when the mast of a boat they were pushing out of the Potomac River came into contact with Southern Maryland Electric Cooperative, Inc.'s ("SMEC") power lines. The district court granted SMEC's motion for summary judgment, holding that the Plaintiffs had been contributorily negligent as a matter of law. Agreeing with the district court's conclusions, we affirm.

## I

On September 2, 1990, Plaintiffs and the decedent joined William Jimenez and others for a picnic at St. George's Creek Beach in southern Maryland along the Potomac River. The day was sunny and clear, and Jimenez brought his catamaran along to go sailing. Plaintiffs had never been to St. George's Creek Beach before.

Around 7:30 p.m. but before sunset, Plaintiffs and the decedent decided to help Jimenez take the catamaran from the water's edge and load it onto Jimenez's trailer. The top of the boat's aluminum mast, which was still raised, stood 30.1 feet above the ground. Plaintiffs asked Jimenez if they should lower the mast before attempting to move the boat, and Jimenez replied that it would not be necessary. As the four pushed the boat across the sand, the mast came in contact with an overhead electrical power line which stood 32 feet above the ground. Julio Ramos was electrocuted, and the others were injured.

Plaintiffs presented deposed testimony that an SMEC employee responsible for line safety believed there were signs posted at the beach strip warning of the power lines when in fact there were no such signs. Plaintiffs also presented deposed expert testimony of an electrical engineer to the effect that SMEC should have been on notice of the dangers posed by the presence of its poles so near to a recreational waterway and should have taken measures to safeguard against injuries such as Plaintiffs'. SMEC included uncontroverted evidence with its motion for summary judgment that the lines had been in place for thirty years, that they were in plain view with no obstructions or overgrowth blocking visibility of the poles or the lines, and that no accident ever had been reported in this area involving the lines in question.

SMEC moved for summary judgment, and the district court granted the motion after a hearing on the evidence. The district court rejected the theory that SMEC had been grossly negligent and held that, as a matter of law, Plaintiffs' action was barred by their own and the decedent's contributory negligence. This appeal followed.

## II

Plaintiffs' action presents two issues on appeal: (1) whether the Plaintiffs were contributorily negligent as a matter of law; and (2) whether SMEC acted in a manner that was grossly negligent and to which contributory negligence would not provide a complete defense. In reviewing a grant of summary judgment, we apply the same standards as the district court and our scope of review is *de novo. Miller v. FDIC,* 906 F.2d 972, 974 (4th Cir.1990); *Farwell v. Un,* 902 F.2d 282, 287 (4th Cir.1990). Summary judgment is appropriate in those cases in which there is no genuine dispute as to a material fact, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Miller,* 906 F.2d at 973. When reviewing a motion for summary judgment, we must draw any inferences in the light most favorable to the non-movant, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant, *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■■■ Because the accident occurred in Maryland, the laws of Maryland govern the substantive legal issues in this diversity action. In 1965, the Court of Appeals of Maryland, Maryland's highest appellate court, decided a case that plainly controls the outcome herein. *See Southern Maryland Elec. Coop., Inc. v. Blanchard,* 239 Md. 481, 485–91, 212 A.2d 301, 304–07 (1965). In *Blanchard* the court was faced with the issue whether the plaintiff was guilty of contributory negligence as a matter of law when he flatly denied ever seeing or becoming aware of the electric wire which caused his injury. *Id.* at 484–85, 212 A.2d at 303–04. The court held that "irrespective of whether plaintiff had *actual* knowledge of the presence of the wire, the law, under the circumstances here involved, *charged* him with such knowledge." *Id.* at 485, 212 A.2d at 304 (emphasis in original). The court added that "[i]t is a fundamental principle of negligence law that a person must use his Providence-given senses to avoid an injury to himself." *Id.*

In reaching this conclusion, the court cited a long line of Maryland cases charging plaintiffs with the knowledge of wires that are within their plain view. *Id.* at 486–90, 212 A.2d at 304–07; *see, e.g., Bahner v. Consolidated Gas, Elec. Light & Power Co.,* 159 Md. 138, 142–43, 150 A. 452, 454 (1930) (holding that the deceased must have known of the location of the wire, as it was in plain view, and therefore charging him with such knowledge as well as knowledge of its dangerous character); *Mayor of Cumberland v. Lottig,* 95 Md. 42, 48, 51 A. 841, 842 (1902) (holding that whether the mother or child had actual knowledge of the location of the wire, they were chargeable with such knowledge because the wire was in plain view); *Thompson v. Consolidated Gas Elec. Light & Power Co.,* 111 F.Supp. 719, 729–30 (D.Md.1953) (charging plaintiff with knowledge of wire's presence and dangerous nature when mast of plaintiff's yacht came into contact with defendant's high voltage wire).

The Court of Appeals of Maryland has cited the *Blanchard* holding consistently and favorably on numerous occasions, as recently as 1985. *See, e.g., Liscombe v. Potomac Edison Co.,* 303 Md. 619, 629–33, 495 A.2d 838, 843–44 (1985); *Frazee v. Baltimore Gas & Elec. Co.,* 255 Md. 627, 633–34, 258 A.2d 425, 428 (1969); *Driver v. Potomac Elec. Power Co.,* 247 Md. 75, 81–82, 230 A.2d 321, 325 (1967). Only in one opinion since *Blanchard* has a Maryland appellate court varied from the strict holding that contact with power wires implicates contributory negligence as a matter of law. In *Potomac Elec. Power Co. v. Smith,* 79 Md.App. 591, 558 A.2d 768, *cert. denied,* 317 Md. 393, 564 A.2d 407 (1989), the Court of Special Appeals of Maryland affirmed the trial court's decision to let the issue of contributory negligence go to the jury. *Id.* at 614–15, 558 A.2d at 780. In *Smith* the plaintiff was electrocuted by a fallen wire. The court distinguished this case from the situation in *Blanchard* by noting

that the decedent had never previously travelled along the pathway, that the power line had fallen to a location in close proximity to the pathway, and that, as thus positioned, it appeared to several witnesses that it was a "rope," or a "railing." In fact, the police investigators responding to the scene were unable to recognize the downed power line as such until further inspection traced it to the utility poles (about 500 feet apart) to which it was still attached.

*Id.* at 614, 558 A.2d at 780.

Unlike the facts in *Blanchard* and the case at hand, *Smith* involved a downed power line that was not in plain view and therefore could not be easily recognized as such. Plaintiffs' account of the facts, even viewed in the light most favorable to them, does not bring their case in line with *Smith;* therefore, the district court was correct in holding the Plaintiffs and the decedent contributorily negligent as a matter of law.

■■■ Plaintiffs contend that despite their contributory negligence SMEC was grossly negligent, and that contributory negligence does not provide a defense to gross negligence. Plaintiffs' assertion fails for two reasons. First, Maryland never has held that contributory negligence does not bar gross

negligence. To the contrary, many cases have suggested just the opposite in dicta. *See, e.g., Harrison v. Montgomery County Bd. of Educ.,* 295 Md. 442, 451, 456 A.2d 894, 898 (1983) (observing that it is "the well-established law of this State that a plaintiff who fails to observe ordinary care for his own safety is contributorily negligent and is barred from all recovery, regardless of the quantum of a defendant's primary negligence"); *Stancill v. Potomac Elec. Power Co.,* 744 F.2d 861, 865 n. 21 (D.C.Cir.1984) (noting that "[n]either party, however, has directed us to any Maryland case expressly so holding, and our own review of Maryland caselaw might lead us to the conclusion that contributory negligence defeats claims based upon gross negligence, as well as those based upon simple negligence"); *Ladnier v. Murray,* 572 F.Supp. 544, 547 (D.Md.1983) (applying Maryland law to the effect that "contributory negligence is an absolute bar to recovery in a negligence case"), *rev'd in part, vacated in part, on other grounds,* 769 F.2d 195 (4th Cir.1985).

■ Second, even if we were to assume that Maryland would limit the bar of contributory negligence to a defendant's acts of simple negligence, Plaintiffs have failed to establish the factual basis for a determination of gross negligence. In Maryland, to establish gross negligence, a plaintiff must show "a premeditated decision, deliberately arrived at, by an indifferent [actor] in possession of facts which should have indicated almost certain harm to others." *Smith v. Gray Concrete Pipe Co.,* 267 Md. 149, 172, 297 A.2d 721, 734 (1972), *overruled on other grounds by Owens–Illinois, Inc. v. Zenobia,* 325 Md. 420, 460, 601 A.2d 633, 652 (1992).

In another electrocution case, the Maryland court held that the defendant was not grossly negligent when it failed to raise wires immediately after an accidental contact occurred. *Liscombe,* 303 Md. at 637, 495 A.2d at 847. The defendant had planned but not yet implemented line relocation when plaintiff was injured by contact with the same wires. The court concluded that the defendant had no indication, even after the first accident, "that almost certain harm to others

would result from their action or their failure to act." *Id.,* 495 A.2d at 847.

In this case, the Plaintiffs suggest that SMEC's failure to post signs demonstrates gross negligence. That fact standing alone will not suffice to withstand a motion for summary judgment. SMEC had no reason to believe that its maintenance of the St. George's Creek Beach power lines would bring certain harm to anyone. The district court was correct in rejecting Plaintiffs' assertion that they could overcome a finding of contributory negligence by building a case on SMEC's gross negligence.

### III

Plaintiffs fail to surmount the inescapable legal conclusion that, under Maryland law, wires in plain view represent a recognizable danger against which they must guard themselves. They also are unable to mitigate the deleterious effect of their own negligence by elevating SMEC's conduct to the level of gross negligence. Therefore, we affirm the district court's grant of SMEC's motion for summary judgment.

*AFFIRMED.*